UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE: §
 §  Case No: 22-31780-swe13
GEORGE DALE WIGINGTON § Chapter No: 13
 §

## OBJECTION TO U.S. BANK'S PROOF OF CLAIM and OBJECTION TO TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS

TO THE HONORABLE U.S. BANKRUPTCY COURT:

COMES NOW GEORGE DALE WIGINGTON ("**Debtor**") who files this Objection to Claim of U.S. Bank and Objection to Trustee's Recommendation Concerning Claims Motion for Reconsideration and, for cause shown below, requests that the Court disallow, or allow in reduced amount, U.S. Banks' claim and require Trustee to modify the TRCC in accordance with the Court's ruling on the claim objection.

### OBJECTION TO U.S. BANK'S PROOF OF CLAIM

**Part 1 – Grounds for Complete Disallowance**

1. U.S. Banks' proof of claim should be disallowed in its entirety based on the following grounds.

**Ground 1 – Confirmation of Chapter 11 Plan/Novation/Release/Waiver**

2. U.S. Bank is attempting to enforce an obligation (note and deed of trust) that has been modified and superseded by a confirmed bankruptcy plan.

3. Debtor had a Chapter 11 Plan [DOC 316] confirmed in Case 11-41092 in the Bankruptcy Court of the Eastern District of Texas on June 4, 2013. [DOC 388]. The Note and the Deed of

Trust submitted in support of U.S. Bank's claim here were also submitted in support of CitiMortgage's claim in the prior case.[1]

4.  CitiMortgage's claim was treated in full as a total debt claim under Section 3.32 of the Chapter 11 Plan.

5.  In a standard individual Chapter 11 case, after confirmation there exists two obligations for each claim treated under the plan, the original (pre-confirmation) debt—which is stayed during the pendency of the plan—and the obligation provided in the plan. Thus, subsequent to the confirmation of a plan, the only enforceable obligation is that which is contained in the plan. Thus, since plan was never revoked, and the case was never dismissed or converted subsequent to the confirmation,[2] the only existing obligation—if any—is that contained in the plan itself.

6.  In addition, the plan here provided for the immediate affirmative release and waiver of recourse for "all claims for which treatment has been provided in the Plan."[3]

7.  Thus, the confirmed Chapter 11 Plan is the appropriate obligation for consideration here. This is important because there is a distinction between the transfer of the stayed, waived, and released pre-confirmation obligation and the transfer of the obligation under the plan. For instance, a negotiable instrument—if endorsed in blank—is negotiable by transfer of possession, the obligations under the plan, which is not a negotiable instrument, is only transferable by assignment and requires a notice of transfer of claim to be filed with the court.

### Ground 2 – Res Judicata and Collateral Estoppel

---

[1] Notably, the endorsement contained on the note in this case was absent from the note in the claim filed on November 11, 2011 in the prior case.

[2] The case was filed as a Chapter 13 and converted to Chapter 11 prior to confirmation of any plan.

[3] 11. Section 6.3 of the Chapter 11 plan provides that "all Claims for which treatment has been provided in the Plan shall be deemed fully satisfied upon the distribution of property or payment of cash as provided herein, and such claimant shall have no further recourse against and does affirmatively release the Debtors."

8. Upon completion of payments under the plan, the Court holds a hearing to determine whether all payments under the plan have been completed pursuant to 11 U.S.C §1141(d)(5).

9. Upon making an affirmative finding, the Court issues an order of discharge which discharges debt. This bankruptcy discharge eliminates the in personam liability of the debtor. This bankruptcy discharge, in and of itself, does nothing to reduce the in rem liability of any liened property for the discharged debt.  <u>Thus, Debtor is not claiming that a bankruptcy discharge releases liens. Again, Debtor is not claiming that a bankruptcy discharge releases liens—no matter how many times opposing counsel may claim otherwise.</u>

10. However, as a condition of issuing a Chapter 11 discharge, the bankruptcy codes requires the Court to find that all payments under the plan have been completed. That factual finding is protected by collateral estoppel. Federal Collateral estoppel depends on three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. All three elements are met here.

11. In addition, U.S. Bank's claim is precluded by res judicata. In its Notice of Intent to Issue Order of Discharge For An Individual Debtor in a Chapter 11 Case ("Notice of Intent to Issue Discharge") [DOC 433], the Court expressly stated that it was going to consider "whether all whether such debtor has actually completed all payments for which such debtor was designated to act as the disbursing agent under the confirmed Chapter 11 plan" and stated that if no objection was filed it would deem that all prerequisites to the entry of a Chapter 11 discharge fulfilled. Despite proper notice to all parties of record, no such objections were made and the Court issued an order of discharge [DOC 440].

12.   For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. All three elements are met here.

13.   U.S. Bank is in privity with CitiMortgage and any potential principal for which CitiMortgage was acting when it filed its claim by assignment, transfer, or negotiation.

14.   All other grounds and causes of action are subject to, and secondary to, the collateral estoppel and res judicata claims in this objection.

### Ground 3 – Refusal of Tender / Bankruptcy Discharge

15.   During the bankruptcy proceeding, Debtor tendered to CitiMortgage payments sufficient to satisfy the allowed claim, including interest on the claim as provided in the plan.

16.   These payments were properly tendered to the proper payee and proper address provided in the allowed claim as provided in the Plan and pursuant to the Bankruptcy Code and Rules related to payment addresses and payees.

17.   To the extent that any tender was refused or returned to Debtor, the secured property's liability for the secured debt is reduced by the amount of such payment refused or returned. This Texas rule of law, which applies to secured property and to guarantors, is different from the law with regard to refused tenders with regard to liability of a debtor. In the latter case, the amount of the debt is not reduced but no interest accrues on the amount of the refused tender from that date forward.

18.   This refusal of tender rule results in the amount of the secured debt being reduced to $0 by the refusal of tenders sufficient to satisfy the amount of the claim. Coupled with the bankruptcy discharge which eliminates Debtors in personam liability, this results in neither the

Debtor nor Debtor's property being liable for the debt and requires disallowance of the claim in its entirety.

**Part 2 – Grounds for Allowance in a Reduced Amount**

19. The grounds below for allowance of the claim in a reduced amount do not depend on the grounds above given for disallowance of the claim in its entirety and should be evaluated even if the claim is not disallowed in its entirety.

**Ground 4 – Binding Effect of Proof of Claim in Case 11-41092/ Payments**

20. CitiMortgage filed claim 28 in Case 11-41092 in the total amount of $159,937.34. This included a $100 in Post Petition Attorney Fees, $0 in interest, and $965.31 in Escrow Adv/Shortage. This allows the principal balance, on the date the petition was filed (April 4, 2011), to be calculated as $158,872.03.

21. No objection to this claim was filed and it was deemed allowed following the deadline to file and objection pursuant to the bankruptcy code.

22. This deemed allowance and the amount of the claim is subject to the same res judicata and collateral estoppel defenses as described above.

23. U.S. Banks predecessors-in-interest have pled in prior Court filings that the amount of the allowed claim was $167, 453.92. This directly conflicts with the amount of the secured claim identified in Box 4 and the information in the arrearage detail. Thus, a large portion of the disputed difference is based this discrepancy in the "starting balance" against which acknowledged payments should be credited.

24. Debtor accounts for the $965.31 in Escrow Adv/Shortage in the escrow payments detailed in Exhibit 1. This $965.31 was a projected escrow shortage and was included in CitiMortgage's post-petition escrow calculations.

25.     Exhibit 1 uses a starting balance of $158,972.03 based on adding the $100.00 post-petition attorney fees to the calculated amount of principal as the beginning principal balance.

26.     As shown in Exhibit 1, the 72 principal and interest payments acknowledged by U.S. Banks and its predecessors-in-interest result in a reduction in the principal amount to $95,695.65 as of December 6, 2016. Payments made during the pendency of Case 18-42230 by the Chapter 13 trustee totaling $12,837.70 further reducing the principal balance to 82,857.95.

27.     Application of the refused tender rule with regarding to personal liability would mean that, at most, the proper principal balance would be $82,857.95.

28.     If the refused tender rule with regarding to personal liability is not applied, there would be $17,106.50 in interest due.

### Ground 5 – Failure to Attach Invoices to Proof of Claim

29.     The proof of claim includes $5,920.56 as "Fees, costs, due" and $22,338.64 for "Escrow Deficiency for Funds Advanced." U.S. Bank failed to attach legible copies of unpaid invoices substantiating pre-petition fees, expenses, and other charges as part of the claim.

30.     Debtor objects to the inclusion of these amounts in the allowed claim pursuant to the Court's Standing Order Concerning All Chapter 13 Cases Rule 15(b)(2)

### Ground 6 – Improper Fees

31.     U.S. Bank's proof of claim includes improper legal, title, and foreclosure fees in the amount of $5,920.56.

32.      These include, without limitation, foreclosure fees associated with filing a foreclosure in the wrong county, foreclosure fees incurred prior to a valid acceleration of the debt or after abandonment of any valid acceleration, fees associated with invalid notice of sale, and inspection fees made at a time when debt was not in default.

33. Debtor reserves right to further amend his objection after inspection of required invoices.

### Ground 7 – Improper Escrow Advances

34. U.S. Bank's proof of claim includes improper fees for "Escrow Deficiency for Funds Advanced" in the amount of $22,338.64

35. These include, without limitation, escrow advances made at a time that U.S. Banks and its predecessors-in-interest had no right or obligation to advance escrow advances for property taxes and property insurance.

36. Debtor reserves right to further amend his objection after inspection of required invoices.

**Part 3 – Procedural/Evidentiary Objections**

37. The endorsement on the note in U.S. Bank's proof of claim is defective. The endorser failed to indicate that she was executing the endorsement on behalf of the holder of the note. It appears that such a showing was attempted but endorser's capacity is missing and unreadable.

38. As a result, the note is specifically endorsed and since U.S. Bank is not the holder of the note it must prove the transaction by which the note came into its possession and all the other transaction in the chain of title. It also precludes U.S. Bank from being a holder in good faith. U.S. Bank is also precluded because the debt was in default, allegedly, when the debt was transferred to it.

39. There is also indication that the endorsement of the note was fraudulent or that it was indorsed out of time. ABN AMRO Mortgage Group, Inc. had already merged into CitiMortgage at the time the proof of claim in 11-41092 was filed. The note in the proof of claim filed did not contain the endorsement shown on the proof of claim filed in this case. Thus, based on the evidence included in the two proofs of claim, the endorsement, which purports to be from ABN

AMRO Mortgage Group, Inc. was added after ABN AMRO Mortgage Group, Inc. ceased to exist.

40. For these reasons, U.S. Bank's proof of claim does not constitute prima facie evidence of the validity and amount of the claim. The burden is on U.S. Bank to present evidence on all aspects of its claim.

## OBJECTION TO TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS

41. For the grounds stated above, Debtor objects to the treatment of U.S. Bank's claim as provided in the TRCC.

## PRAYER

WHEREFORE, Debtor prays that the Court sustain Debtor's Objection and

1) Disallow U.S. Bank's proof of claim in full, or

2) Allow U.S. Bank's proof of claim in a reduced amount as detailed above, and

3) Require Trustee to modify the TRCC, and

4) Grant general relief and all other relief as may be just and proper in the premises.

Respectfully submitted,

Dated: June 20, 2023

/s/ George Dale Wigington
George Dale Wigington
Pro Se
State Bar No.: 24091665
Dalewig10@verizon.net
2451 Elm Grove Road
Wylie, TX 75098
469-235-1482

**DETAIL - ALL MORTGAGE PAYMENTS UNDER THE PLAN**

| Payment Number | Payment Due Date | Payment Date | Payment Method/Source | Credited? | If Credited, by Whom? | Payment Amount | Principal Balance (After Payment) | Principal Applied | Interest Paid | Escrow Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Beginning Principal Balance | | $ 158,972.03 | | | |
| 1 | 05/01/11 | 4/5/2011 | Inwood 1326 - EFT | No | Citimortgage | $ 2,057.13 | $ 157,568.31 | $ 1,403.72 | $ 21.78 | $ 631.63 |
| 2 | 06/01/11 | 5/3/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,057.13 | $ 156,115.55 | $ 1,452.76 | $ 604.37 | $ - |
| 3 | 07/01/11 | 5/31/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,057.13 | $ 155,300.80 | $ 814.75 | $ 598.80 | $ 643.58 |
| 4 | 08/01/11 | 7/11/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 154,747.54 | $ 553.26 | $ 872.24 | $ 607.84 |
| 5 | 09/01/11 | 8/10/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 153,957.98 | $ 789.55 | $ 635.95 | $ 607.84 |
| 6 | 10/01/11 | 9/6/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 153,101.92 | $ 856.07 | $ 569.43 | $ 607.84 |
| 7 | 11/01/11 | 10/3/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 152,242.69 | $ 859.23 | $ 566.27 | $ 607.84 |
| 8 | 12/01/11 | 11/14/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 151,693.10 | $ 549.58 | $ 875.92 | $ 607.84 |
| 9 | 01/01/12 | 11/29/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 151,187.14 | $ 505.96 | $ 311.70 | $ 1,215.68 |
| 10 | 02/01/12 | 12/27/2011 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 150,341.54 | $ 845.60 | $ 579.90 | $ 607.84 |
| 11 | 03/01/12 | 1/23/2012 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,033.34 | $ 149,472.09 | $ 869.44 | $ 556.06 | $ 607.84 |
| 12 | 04/01/12 | 2/29/2012 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 148,804.19 | $ 667.90 | $ 757.60 | $ 594.42 |
| 13 | 05/01/12 | 3/28/2012 | Inwood 1326 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 147,949.45 | $ 854.74 | $ 570.76 | $ 594.42 |
| 14 | 06/01/12 | 5/3/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.32 | $ 147,254.16 | $ 695.29 | $ 729.61 | $ 594.42 |
| 15 | 07/01/12 | 5/30/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 146,373.30 | $ 880.86 | $ 544.64 | $ 594.42 |
| 16 | 08/01/12 | 6/26/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 145,489.18 | $ 884.12 | $ 541.38 | $ 594.42 |
| 17 | 09/01/12 | 8/8/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 144,920.67 | $ 568.51 | $ 856.99 | $ 594.42 |
| 18 | 10/01/12 | 9/5/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 144,060.95 | $ 859.72 | $ 555.86 | $ 604.34 |
| 19 | 11/01/12 | 10/3/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 143,197.93 | $ 863.02 | $ 552.56 | $ 604.34 |
| 20 | 12/01/12 | 10/30/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 142,311.99 | $ 885.94 | $ 529.64 | $ 604.34 |
| 21 | 01/01/13 | 12/4/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 141,578.73 | $ 733.26 | $ 682.32 | $ 604.34 |
| 22 | 02/01/13 | 12/26/2012 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 140,589.82 | $ 988.90 | $ 426.68 | $ 604.34 |
| 23 | 03/01/13 | 1/29/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 139,829.05 | $ 760.78 | $ 654.80 | $ 604.34 |
| 24 | 04/01/13 | 2/27/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,019.92 | $ 138,959.03 | $ 870.01 | $ 555.49 | $ 594.42 |
| 25 | | 2/28/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 434.04 | $ 138,959.03 | $ - | $ - | $ 434.04 |
| 26 | 05/01/13 | 4/2/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,453.96 | $ 138,180.74 | $ 778.29 | $ 647.21 | $ 1,028.46 |
| 27 | 06/01/13 | 4/30/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,453.96 | $ 137,285.25 | $ 895.49 | $ 530.01 | $ 1,028.46 |
| 28 | 07/01/13 | 5/21/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,127.24 | $ 136,581.40 | $ 703.85 | $ 394.93 | $ 1,028.46 |
| 29 | 08/01/13 | 6/25/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,453.96 | $ 135,484.02 | $ 1,097.38 | $ 654.84 | $ 701.74 |
| 30 | 09/01/13 | 7/26/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,127.24 | $ 134,633.86 | $ 850.16 | $ 575.34 | $ 701.74 |
| 31 | 10/01/13 | 8/27/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,127.04 | $ 133,097.00 | $ 1,536.86 | $ 590.18 | $ - |
| 32 | 11/01/13 | 10/3/2013 | Wells Fargo 6256 - EFT | Yes | Citimortgage | $ 2,127.04 | $ 133,027.06 | $ 69.94 | $ 674.60 | $ 1,382.50 |
| 33 | 12/01/13 | 10/30/2013 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,106.26 | $ 131,412.82 | $ 1,614.24 | $ 492.02 | $ - |
| 34 | 01/01/14 | 12/3/2013 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,106.26 | $ 131,253.04 | $ 159.78 | $ 612.06 | $ 1,334.42 |
| 35 | 02/01/14 | 1/7/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,106.26 | $ 130,429.73 | $ 823.30 | $ 629.30 | $ 653.66 |
| 36 | | 1/7/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 27.10 | $ 130,429.73 | $ - | $ - | $ 27.10 |
| 37 | 03/01/14 | 2/5/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,374.26 | $ 129,227.28 | $ 1,202.45 | $ 518.15 | $ 653.66 |
| 38 | 04/01/14 | 3/5/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,106.26 | $ 128,297.44 | $ 929.83 | $ 495.67 | $ 680.76 |
| 39 | 05/01/14 | 3/31/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,106.26 | $ 127,328.89 | $ 968.55 | $ 456.95 | $ 680.76 |
| 40 | 06/01/14 | 5/1/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,153.54 | $ 126,444.10 | $ 884.79 | $ 540.71 | $ 728.04 |
| 41 | 07/01/14 | 5/28/2014 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,153.54 | $ 125,486.27 | $ 957.83 | $ 467.67 | $ 728.04 |
| | **Total through First Anniversary Date of Plan Confirmation** | | | | | **$ 82,240.69** | | **$ 33,485.76** | **$ 22,430.34** | **$ 26,324.59** |

**DETAIL - ALL MORTGAGE PAYMENTS UNDER THE PLAN**

| Payment Number | Payment Due Date | Payment Date | Payment Method/Source | Credited? | If Credited, by Whom? | Payment Amount | Principal Balance (After Payment) | Principal Applied | Interest Paid | Escrow Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Beginning Principal Balance** | | $ 102,711.18 | | | |
| 67 | 08/01/16 | 7/6/2016 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,231.44 | $ 101,792.21 | $ 918.98 | $ 506.52 | $ 805.94 |
| *68 | 09/01/16 | 8/2/2016 | Wells Fargo 6480 - EFT | Yes | Citimortgage | $ 2,231.44 | $ 100,743.20 | $ 1,049.01 | $ 376.49 | $ 805.94 |
| 69 | 10/01/16 | 8/28/2016 | Wells Fargo 6480 - EFT | Yes | Nationstar | $ 2,231.44 | $ 99,676.51 | $ 1,066.69 | $ 358.81 | $ 805.94 |
| 70 | 11/01/16 | 9/29/2016 | Wells Fargo 6480 - EFT | Yes | Nationstar | $ 2,231.44 | $ 98,687.95 | $ 988.56 | $ 436.94 | $ 805.94 |
| 71 | 12/01/16 | 10/25/2016 | Wells Fargo 6480 - EFT | Yes | Nationstar | $ 2,231.44 | $ 97,613.94 | $ 1,074.01 | $ 351.49 | $ 805.94 |
| **72 | 01/01/17 | 12/6/2016 | Wells Fargo 6480 - EFT | Yes | Nationstar | $ 2,231.44 | $ 96,750.05 | $ 863.89 | $ 561.61 | $ 805.94 |
| | | | | | | | 95,695.65 | $ | | |

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the parties below on June 20, 2023 by mailing a copy of same to them via first-class mail or through the court's CM/ECF electronic mail (Email) system.

/s/ George Dale Wigington
George Dale Wigington

Thomas Powers
*cmecf@dallas13.com*

Kristin Ann Zilberstein
Attorney for U.S. Bank Trust N.A.
*Kris.Zilberstein@Padgettlawgroup.com*
*BKecf@padgettlawgroup.com*
*Kris.Zilberstein@ecf.courtdrive.com*