# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER: 18-42230 |
| GEORGE DALE WIGINGTON | § | (Chapter 13) |
| dba WYLIE INDUSTRIES | § | |
| dba WYLIE INVESTMENT GROUP, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| GEORGE DALE WIGINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 19-4074 |
| | § | |
| NATIONSTAR MORTGAGE LLC | § | |
| d/b/a MR. COOPER and SELECT | § | |
| PORTFOLIO SERVICING, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

In this adversary proceeding, the *pro se* plaintiff, George Wigington, seeks a judgment releasing a lien on his home and awarding him damages against the defendants, Nationstar Mortgage, LLC d/b/a Mr. Cooper ("**Nationstar**") and Select Portfolio Servicing, Inc. ("**SPS**"). Mr. Wigington also objects to the allowance of the proof of claim filed by Nationstar and assigned to SPS. The defendants each filed motions to dismiss Mr. Wigington's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012. SPS's motion does not specifically address Mr. Wigington's claim objection; however, Nationstar seeks to dismiss Mr. Wigington's complaint, which is styled as an objection to Nationstar's proof of claim, "only to the extent that the objection is the basis for any damages against [Nationstar]."

1

The Court exercises core jurisdiction over this adversary proceeding and the dismissal motions in accordance with 28 U.S.C. §§ 157 and 1334. This memorandum opinion contains the Court's findings of fact and conclusions of law with respect to the motions in accordance with Federal Rule 52 and Bankruptcy Rule 7052.

## FEDERAL RULE 12(b)(6) STANDARD

To withstand dismissal under Federal Rule 12(b)(6), the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The allegations must "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.; see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted).

Here, Mr. Wigington alleges breaches of contract and numerous violations of state and federal law by the defendants. His amended complaint is 160 pages long and attaches 663 pages of documents. Although his amended complaint is rich with detail, his actual claims are difficult to decipher. He appears to assert as many as fifteen claims for relief, including claims for violations of the discharge injunction, the automatic stay, the Texas Deceptive Trade Practices Act, and the Fair Debt Collection Practices Act. In essence, he asserts he paid his mortgage on time, and in full, but the defendants wrongly treated the mortgage as in default.[1]

At the hearing on the motion to dismiss, Mr. Wigington maintained that the facts were largely undisputed. The dispute centers on the legal effect of the facts set forth in his amended complaint and the attached documents, according to Mr. Wigington. When resolving a Federal

---

[1] Mr. Wigington appears to assert the claims jointly against both defendants with the exception of a claim for violations of the Federal Fair Debt Collection Practices Act, which appears to be pled only against SPS.

2

Rule 12(b)(6) motion to dismiss, a court "may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017). If allegations in the complaint conflict with an attached document that the complainant adopts, the document controls. *See Saunders v. Duke*, 766 F.3d 1262, 1270–71 (11th Cir. 2014); *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008). *See also Simmons v. PeavyWelsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Having reviewed Mr. Wigington's amended complaint as well as the attached and incorporated documents, and having given controlling weight to the documents (to the extent the documents conflict with the amended complaint), the relevant alleged facts are as follows.

### ALLEGED FACTS

On June 4, 2011, George and Teresa Wigington filed a *pro se* petition for relief under Chapter 13 of the Bankruptcy Code, which this Court assigned case number 11-41092. The Wigingtons moved to convert their case to Chapter 11, and the Court granted their motion on April 12, 2012. The Wigingtons retained counsel and obtained an order confirming a plan of reorganization on June 4, 2013.

Prior to their bankruptcy, on December 29, 2004, the Wigingtons obtained a mortgage loan by executing a note and deed of trust. Paragraph 5 of the note provides that "the place of payment is 4242 N. Harlem Ave., Norridge, IL 60706, Attn: Cashiering or at a different place if required by the Note Holder." Page 3 of the deed of trust states: "Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15."

At the time of plan confirmation, CitiMortgage serviced the mortgage on the Wigingtons' home. Their confirmed Chapter 11 plan provided for the following treatment of CitiMortgage's secured claim:

> 3.32. Class Two – Secured Claim of Citi-Mortgage. (Individual Debtors' homestead at 2451 Elm Grove, Wylie, Collin County, Texas) The Allowed Secured Claim of CitiMortgage on the Debtors' home shall be paid in accordance with the existing contract with CitiMortgage. **All terms of the pre-petition contract remain unchanged except as modified herein and will be considered current upon confirmation.** The Arrearage Amount of $1,065.31 shall be paid in regular monthly payments over a period not to exceed 24 months from the Effective Date. The arrearage claim shall accrue interest from the effective date until paid in full. Arrearage payments shall be applied exclusively to arrearage claim. Citi-Mortgage shall retain their lien until their Allowed Secured Claim including Arrearage is paid in full. Class Two is impaired and is allowed to vote in Class 2.

(Emphasis added.) The property of the bankruptcy estate vested in the Wigingtons on the "effective date" of the plan, which plan section 1.05.22 defined as 60 days after the confirmation date. In particular,

> 3.40. Class Ten – Interests of the Debtors. Class Ten consists of the interests of the Debtors. **On the Effective Date, title and ownership of all Property of the Estate shall vest in the Individual Debtors free and clear of any lien, claim or interest of a Creditor or party of interest, except as otherwise specifically provided in the Plan or Order Confirming the Plan**. Debtors' disposable income will be dedicated to fund the plan as required. Class Ten is Impaired.

(Emphasis added.)

Section 10.07 of the plan, entitled "Provisions Governing Distributions" states the Wigingtons shall make all payments and distributions as indicated and as soon as reasonably practicable after the effective date except as otherwise provided for in the plan or ordered by the Court. Section 10.07 goes on to state as follows: (a) any payment or distribution made by the Wigingtons pursuant to the plan to the extent delivered by U.S. Mail shall be deemed made when deposited into the U.S. Mail, (b) distributions and deliveries to holders of allowed claims shall

4

be made at the addresses set forth on the proofs of claim filed by such the holders, and (c) checks issued by the Wigingtons as to allowed claims shall be null and void if not cashed within ninety (90) days of the delivery date and after such date all claims with respect to voided checks shall be discharged and forever barred.

On October 7, 2014, the Wigingtons moved to close their Chapter 11 case. No one objected. On November 3, 2014, the Court entered an order granting the motion and closed the case "subject to its anticipated re-opening upon the completion of all payments required to be made under the confirmed Chapter 11 plan." Upon completion of all plan payments, and in order to receive a bankruptcy discharge, the Court's November 3rd order required the Wigingtons to file a motion to reopen their case and a separate notice of plan completion.

On August 29, 2016, after the closure of their bankruptcy case, the Wigingtons received a Notice of Servicing Transfer explaining that the servicing of their mortgage loan had been transferred from CitiMortgage to Nationstar with a new payment address. The Wigingtons ignored the notice and continued to send their monthly payments to CitiMortgage at the old address. They sent check after check to CitiMortgage, month after month, at the old payment address, and they received them all back, uncashed. In total, after receiving notice that the servicing of their mortgage had been transferred to Nationstar with a new payment address, the Wigingtons sent CitiMortgage 18 checks totaling $101,222.06, each of which was returned to Mr. Wigington as undeliverable. As a result, the checks were never received by Nationstar, the checks were never negotiated, and the funds were never debited from the Wigingtons' account. After receiving notice of the transfer of the servicing of their mortgage to Nationstar, the Wigingtons also made two payments to CitiMortgage totaling $6,694.32 by electronic funds transfers, which were refunded in full by CitiMortgage.

5

Soon after the transfer of their home mortgage to Nationstar, the Wigingtons began receiving notices of default from Nationstar. On or about June 12, 2017, the Wigingtons received notice that a foreclosure sale would occur on July 4, 2017. Mr. Wigington filed a *pro se* suit against Nationstar in Texas state court on June 29, 2017, claiming that he had fully paid his mortgage and seeking to enjoin Nationstar from foreclosing on his home, among other things. Nationstar promptly moved for summary judgment and amended its motion several times.

While the state court litigation was pending against Nationstar, the Wigingtons moved to reopen their Chapter 11 case on November 1, 2017. On the same day, they filed a Notice of Plan Completion and a Post-Confirmation Report, representing to the Court that they had made all required Chapter 11 plan payments, including payments to CitiMortgage from April 4, 2011 through June 4, 2017. The Wigingtons did not disclose that (i) they had been notified that the loan servicing for their home mortgage had been transferred to Nationstar; (ii) they had been notified of a new address for sending payments on their home mortgage; (iii) they had received notices of default from Nationstar, and (iv) all the checks they sent to CitiMortgage after August 16, 2016, had been returned and unnegotiated. Further, the Wigingtons failed to update the master mailing list for their case and to serve the Notice of Plan Completion and Post-Confirmation Report on Nationstar.

The Court entered an order granting the motion to reopen on November 3, 2017. On November 4, 2017, the Court issued a "Notice of Intent to Issue Order of Discharge for an Individual Debtor in a Chapter 11 Case." The notice was served on CitiMortgage at the address listed in the master mailing list for the bankruptcy case, which the Wigingtons had not amended to include Nationstar. No one objected to the discharge, and the Court entered an order discharging the Wigingtons.

The Court entered the order of discharge on December 15, 2017. The discharge order is a national form (Form No. 3180RI) pursuant to Bankruptcy Rule 9009. The discharge order explains the Chapter 11 discharge as follows:

> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees. **However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated.** For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile. This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

(Emphasis added.) On December 27, 2017, after the Court entered the discharge order, Nationstar filed an appearance and a request to receive notices in the Wigingtons' Chapter 11 case.

Less than a year after the Wigingtons received a Chapter 11 discharge, George Wigington filed a second bankruptcy case. Mr. Wigington filed a *pro se* petition for relief under Chapter 13 of the Bankruptcy Code on October 2, 2018, on the eve of a scheduled foreclosure. He disclosed a secured debt owed to Nationstar in the amount $136,129.71 in his bankruptcy schedules, and he marked the debt as disputed. He also listed a total of approximately $55,000 in three checking and savings accounts in his bankruptcy schedules.

On November 7, 2018, Nationstar filed a proof of claim in the total amount of $134,203.89. This amount includes $50,289.16 in pre-petition arrears.

The Court entered an order confirming Mr. Wigington's Chapter 13 plan on April 22, 2019. The confirmation order explicitly carved out and did not determine the amount of Nationstar's claim, the validity of Nationstar's lien on Mr. Wigington's home, or Mr.

7

Wigington's liability to Nationstar, among other things. On August 23, 2019, Mr. Wigington initiated this adversary proceeding against Nationstar.

On September 23, 2019, Nationstar filed a notice of payment change in Mr. Wigington's open and pending Chapter 13 case. And on October 23, 2019, SPS filed a notice that Nationstar had transferred its claim to SPS.

Mr. Wigington amended his complaint on January 6, 2020 after this Court granted Nationstar's motion for a more definite statement pursuant to Federal Rule 12(e) and Bankruptcy Rule 7012. In his amended complaint, Mr. Wigington asserts numerous affirmative claims against Nationstar and SPS and seeks mental anguish and other damages.[2] He also objects to the allowance of the proof of claim filed by Nationstar and assigned to SPS.[3]

---

[2] In its motion to dismiss, Nationstar identifies fifteen causes of action in Mr. Wigington's amended complaint: i. Violation of Discharge Injunction, § 524(a)(2), by seeking to enforce an extinguished lien as a personal liability; ii. Violation of Discharge Injunction, § 524(i) in the prior Chapter 11 case by failing to credit payments; iii. Violation of Discharge Injunction, § 524(i) in this Chapter 13 case, by failing to credit payments. iv. Contempt for Violation of Discharge Injunction, seeking damages for willful violations; v. Violation of the Automatic Stay in the current Chapter 13 case by filing a motion for relief from the stay, assigning the mortgage to SPS, reporting the default to credit agencies, and paying and charging for insurance premiums and property taxes; vi. Violation of the Texas Debt Collection Act (TDCA) by attempting collection or misrepresenting the amounts due; vii. Violations of the Texas Deceptive Trade Practices Act (DTPA) by attempting collection or misrepresenting the amounts due; viii. Violation of the Federal Fair Debt Collection Practices Act (FDCPA) by attempting collection or misrepresenting the amounts due; ix. Breach of Contract by declaring default and attempting to collect amounts due, failing to provide proper notices of default, accelerating the mortgage, and failing to provide a lien release; x. Texas Common Law Negligence by providing improper notices prior to foreclosure sale and failing to release the mortgage lien; xi. Negligence Per Se by failing to provide proper notices under Texas Property Code § 51.002; xii. Fraudulent Lien under Texas Civil Practices and Remedies Code § 12.002; xiii. Texas Common Law Fraudulent Misrepresentation by taking collection actions on deed of trust that had been extinguished by payment in full; xiv. Fraudulent Scheme by scheming to collect a debt and enforce a deed of trust after payment in full; and xv. Unreasonable Debt Collection by seeking to collect a debt after payment in full.

[3] In summary, Mr. Wigington asserts the claim should not be allowed because (1) it does not have a presumption of validity due to various alleged form and documentation deficiencies, including documentary proof that the servicer advanced funds for insurance and incurred other expenses such as fees for property inspection; and (2) it does not attach the original "wet ink" note, which is required because Mr. Wigington challenges the authenticity of the copy attached to the proof of claim. Mr. Wigington also objects to fees and other charges included in the claim, and he objects that Nationstar failed to credit all the mortgage payments he made.

## CONCLUSIONS OF LAW

Throughout his 160-page amended complaint, Mr. Wigington alleges that he paid his mortgage in full but that Nationstar and then SPS treated the loan as not paid in full and in default and that they wrongly pursued enforcement of the note and deed of trust. Mr. Wigington seeks affirmative recovery against Nationstar and SPS, and he objects to the allowance of the proof of claim filed by Nationstar and assigned to SPS. Nationstar and SPS seek to dismiss Mr. Wigington's claims for affirmative relief and lien release, which rely on two common, conclusory arguments: (1) entry of the discharge order in the prior Chapter 11 case had the effect of discharging, satisfying, or voiding the deed of trust on Mr. Wigington's home; and (2) the checks (and wire transfers) sent to the wrong servicer, CitiMortgage, at the old payment address constituted payments even though they were not cashed nor delivered to the correct servicer, Nationstar, at the correct payment address.

As a general matter, unless avoided, liens pass through bankruptcy unaffected. *See, e.g., Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir. 1995). *See also Johnson v. Home State Bank,* 501 U.S. 78 (1991). When a debtor seeks to avoid a lien by challenging the validity, priority, or extent of a creditor's secured claim, then an adversary proceeding generally is required. *In re Kleibrink,* 346 B.R. 734, 747 (Bankr. N.D. Tex. 2006), *aff'd,* 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), *aff'd,* 621 F.3d 370 (5th Cir. 2010). Here, in their prior Chapter 11 case, the Wigingtons did not challenge CitiMortgage's secured claim or seek to avoid its lien in an adversary proceeding. Indeed, their Chapter 11 plan provided for the payment of CitiMortgage's "allowed secured claim."

The discharge order entered in the Wigingtons' Chapter 11 case explained that only personal liabilities were being discharged. The discharge order also explained that creditors with

9

liens would still be able to enforce those liens. The discharge order is a standard, national form and is consistent with existing law.

Although a bankruptcy discharge eliminates a borrower's personal liability with respect to real property secured by a lien, a discharge does not eliminate a lien on the property and a lender is still permitted to proceed with its *in rem* rights with respect to the property if timely payments are not made. *See* 11 U.S.C. § 1141(d)(5) (providing for an *in personam* discharge); *Johnson v. Home State Bank*, 501 U.S. 78, 80 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*"). To the extent liens are not avoided, paid or otherwise eliminated as part of the bankruptcy case, valid liens may be enforced following discharge. *See generally* 4 COLLIER ON BANKRUPTCY ¶ 524.02[d] (16th ed. 2019). In this way, the Bankruptcy Code balances the "fresh start" policies of a bankruptcy discharge with the need to protect secured creditors' pre-existing lien rights. *See Dewsnup v. Timm*, 502 U.S. 410, 416 (1992). Inasmuch as the Wigingtons did not bring an adversary proceeding in the Chapter 11 case seeking to avoid CitiMortgage's lien on their home, the lien was not avoided by the discharge order.[4]

---

[4] Notably, Nationstar was never served with the two key documents that were the predecessors for the discharge order in this case – the Post-Confirmation Report and the Notice of Intent to Enter Discharge – and Nationstar did not receive the discharge order. Due process under the Fifth Amendment of the U.S. Constitution requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections…." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Federal Rules of Bankruptcy Procedure and this Court's Local Rules of Bankruptcy Procedure emphasize the importance of an accurate master mailing list, which allows all parties in interest to receive notice of actions taken in a bankruptcy proceeding. *See* FED. R. BANKR. P. 1007(a)(1) (requiring the filing of a list of creditors, among other things) and FED. R. BANKR. P. 1009(a) (providing for a general right to amend the list, among other things); LBR 1007-1(a)(5)-(6) (addressing the filing and amendment of the master mailing list) and LBR 1009-1 (addressing service of an amendments to the master mailing list, among other things). Here, the Wigingtons had actual knowledge that the address for their mortgage servicer had changed from CitiMortgage to Nationstar, but they failed to update the master mailing list used for service when they reopened their bankruptcy case. Nationstar was not served with the Wigingtons' Post-Confirmation Report and, therefore, did not receive proper notice of the Wigington's representations to the Court and was not afforded an opportunity to raise an objection prior to the entry of the discharge order.

10

Turning to the terms of the Wigingtons' Chapter 11 plan, "[a] reorganization plan is interpreted as a contract, and in Texas, a specific contractual provision prevails over a general provision." *Mesdaq v. Nancy Sue Davis Trust (In re Davis Offshore, L.P.),* 644 F.3d 259, 266 (5th Cir. 2011). *See also, e.g., Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church*), 333 Fed.App'x 822, 828 (5th Cir. 2009) (stating that the court will "interpret the Plan using traditional tools of contractual interpretations.") (quoting *Advisory Comm. Of Major Funding Corp. v. Sommers (In re Advisory Comm. Of Major Funding Corp.),* 109 F.3d 219, 222 (5th Cir. 1997)) (internal modifications omitted)). In this case, section 3.32 of the Wigingtons' Chapter 11 plan specifically addressed CitiMortgage's claim by providing that the "Allowed Secured Claim of CitiMortgage on the Debtors' home shall be paid in accordance with the existing contract with CitiMortgage" and "[a]ll terms of the pre-petition contract remain unchanged except as modified herein …." The only modification in section 3.32 related to an arrearage, which the Chapter 11 plan allowed the Wigingtons to pay over 24 months.

Mr. Wigington alleges in his amended complaint that he satisfied his mortgage by mailing payments to CitiMortgage at its proof of claim address. He argues that section 10.07 of his confirmed Chapter 11 plan, which is a general provision relating to the mailing of payments, controls or supersedes section 3.32, which specifically addresses the treatment of CitiMortgage's claim. This theory violates the Fifth Circuit's directive for interpretation and application of plan provisions. *Mesdaq*, 644 F.3d at 266. Moreover, plan section 3.32 does not refer to or incorporate plan section 10.07.

Thus, the measure of whether the mortgage was paid in full is whether Mr. Wigington performed under the terms of the pre-petition contract. Mr. Wigington's amended complaint

11

establishes that he did not. The note and deed of trust specified that the mortgage holder had the ability to change the location and the entity to whom payments should be made. Nonetheless, after receiving the Notice of Servicing Transfer dated August 29, 2016, which stated that payments should be made to a new servicer, Nationstar, at a new payment address, Mr. Wigington continued to send payments to CitiMortgage at the old payment address in violation of the terms of the note and deed of trust.

Mr. Wigington alleges in his amended complaint that he fully paid his mortgage loan by "tendering" 91 payments to CitiMortgage between April 5, 2011 and October 2, 2017. According to the Texas Business and Commercial Code § 3.603, "if a tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by the principles of law applicable to tender of payment under a simple contract." *See also ViewPoint Bank v. Allied Prop. & Cas. Ins. Co.,* 439 S.W. 3d 626 (Tex. App. – Dallas 2014). In this case, however, the Notice of Servicing Transfer dated August 29, 2016, notified Mr. Wigington and his wife that Nationstar would be taking over the servicing of their mortgage loan from CitiMortgage effective August 16, 2016, with a new payment address. As of August 16, 2016, CitiMortgage was no longer the entity entitled to enforce the mortgage, and Mr. Wigington's amended complaint establishes that he did not "tender" payments to Nationstar as required to pay the mortgage in full.

Mr. Wigington also invokes the "mailbox rule." Bankruptcy Rule 9006(e) provides that "[s]ervice of process of any paper other than process or of notice by mail is complete on mailing." Under the mailbox rule, "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *In re Pyle,* 201 B.R. 547 (Bankr. E.D. Cal. 1996). The common

12

law "mailbox rule" provides generally that *proper* and *timely* mailing of a document raises a rebuttable presumption that it is received by the addressee. *See, e.g., Wood v. Commissioner,* 909 F.2d 1155 (8th Cir.1990), and *Anderson v. United States,* 966 F.2d 487 (9th Cir. 1992). In this case, however, the presumption does not arise because mailing payments to CitiMortgage was not proper after August 16, 2016. Even if the presumption arose, it has been rebutted. The facts alleged in Mr. Wigington's amended complaint establish that he did not direct mortgage payments to the proper party at the proper address. Mr. Wigington alleges in his amended complaint that after receiving the Notice of Servicing Transfer dated August 29, 2016, he repeatedly mailed payments to the wrong address and addressee, and all the payments were returned as undeliverable.

Mr. Wigington also complains that CitiMortgage and Nationstar failed to comply with Bankruptcy Rule 3001(e)(2) in his prior Chapter 11 case by filing a notice of the transfer of the mortgage loan to Nationstar. Bankruptcy Rule 3001(e) governs the transfer of claims. Bankruptcy Rule 3001(e)(2) specifically governs the transfer of a claim after a proof of claim has been filed and generally requires that evidence of the transfer shall be filed with the bankruptcy court. The holder of the claim may then be entitled to vote on a proposed plan under 11 U.S.C. § 1126, to the protections afforded creditors under 11 U.S.C. § 1129, and to assert other creditors' rights in the bankruptcy case.

Here, the Wigingtons' Chapter 11 plan was confirmed several years before the transfer of the mortgage loan to Nationstar. The bankruptcy estate no longer existed because plan section 3.40 had re-vested the bankruptcy estate in the Wigingtons consistent with 11 U.S.C. § 1141(b), and the Chapter 11 case had been closed consistent with 11 U.S.C. § 350(a) and Bankruptcy Rule 3022. Bankruptcy Rule 3001(e)(2) does not apply after the bankruptcy estate no longer

exists and the case is closed. Moreover, meaningful compliance with Bankruptcy Rule 3001(e)(2) was impossible, because the case had been closed at the request of the Wigingtons.

Finally, in his objection to the proof of claim filed by Nationstar, Mr. Wigington invokes the "show me the note" theory, challenging the endorsement of the note and demanding the original note. The Fifth Circuit has repeatedly rejected this theory. *See, e.g., Wiggington v. The Bank of N.Y. Mellon*, 488 Fed. Appx. 868 (5th Cir. 2012); *Kiggundu v. MERS*, 469 Fed. App'x 330 (5th Cir. 2012). Furthermore, Mr. Wigington's amended complaint attaches recorded copies of the assignment of deed of trust from CitiMortgage to Nationstar (Exhibit 16) and from Nationstar to SPS (Exhibit 17), and he does not plead any facts to challenge their validity.

For all these reasons, the Court concludes that Mr. Wigington's amended complaint fails to state an affirmative claim against Nationstar or SPS upon which relief can be granted. The Court further concludes that Mr. Wigington's amended complaint does not establish that his mortgage was fully paid or that he is entitled to a release of the lien on his home. However, as previously discussed, Nationstar seeks dismissal of Mr. Wigington's claim objection "only to the extent that the objection is the basis for any damages against [Nationstar]." The Court, therefore, leaves for future consideration Mr. Wigington's specific objections to the amount of the claim filed by Nationstar in this case.

Although Mr. Wigington does not appear to have expressly requested leave to amend his current complaint, "Federal Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir. 2005) (citation and internal quotation marks omitted). Leave to amend is in no way automatic, but the court must possess a "substantial reason" to deny a party's request for leave to amend. *Id.* (citation and internal quotation marks omitted). The

Court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Id.* (citation omitted).

Here, Mr. Wigington was already granted leave to amend his complaint after this Court granted a motion for more definite statement by Nationstar. Mr. Wigington's amended complaint is voluminous as are the attachments to the amended complaint. Mr. Wigington's legal theories for liability and damages fail based on the alleged facts, and further amendment would be futile. It is therefore

**ORDERED** that the motion to dismiss by Nationstar [Docket No. 49] and SPS [Docket No. 34] are **GRANTED** and that each and every cause of action seeking affirmative relief and damages, and each and every cause of action seeking lien avoidance or release, in Mr. Wigington's amended complaint against Nationstar and SPS is **DISMISSED** pursuant to Federal Rule 12(b)(6); and it is further

**ORDERED** that within fourteen days of the entry of this Order, Mr. Wigington shall file an amended objection to the proof of claim filed by Nationstar and assigned to SPS that sets forth his objections, if any, to the calculation of the amount set forth in the proof of claim.

Signed on 8/10/2020

*Brenda T. Rhoades*  SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

15