**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Case No: 22-31780-swe13** |
| **GEORGE DALE WIGINGTON** | § | **Chapter No: 13** |
| | § | |
| **Debtor** | § | |

**<u>DEBTOR'S SECOND MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE U.S. BANKRUPTCY COURT:

COMES NOW GEORGE DALE WIGINGTON ("**Debtor**") who files this Second Motion for Summary Judgment and for cause shown below, requests that the Court grant the relief requested herein.

**Table of Contents**

Table of Citations

I. Statement of Facts……………………………………..………………………..5

II. Statement of Question Presented……………………………………………..6

III. Summary Judgment Standard………...……………………………………8

IV. Argument…………………… ……………………………………………..9

A. U.S. Bank's Mortgage Debt Claim is Barred by Res Judicata (Claim Preclusion);
B. U.S. Bank is Barred from Relitigating Whether Debtor Made All Mortgage Payments Required Under the Plan by Collateral Estoppel (Issue Preclusion);
C. Debtor's Chapter 11 Plan Required That the Entire Mortgage Debt be Paid Under the Plan;
D. Any Rule 60(b)(4) Constitutional Notice Affirmative Defense is Barred by Res Judicata;
E. That U.S. Bank Cannot Make a Showing Sufficient to Establish that Nationstar did not have Constitutional Notice to Support a Rule 60(b)(4) Constitutional Notice Affirmative Defense;

F. That Nationstar was Provided Actual Constitutional Notice;
G. That Nationstar was Provided Constitutional Notice Because the Means Employed by Debtor to Provide Notice to Nationstar Was Such as One Desirous of Actually Informing the Absentee Might Reasonably Adopt to Accomplish it;
H. That Under the Conditions Here, Notice to Citimortgage, the Record Claimholder, Satisfied Nationstar's Constitutional Notice Requirements;
I. That Bankruptcy Rule 3001(e)(2) Was Still Applicable at the Time That Nationstar Became Servicer;
J. That Meaningful Compliance with Bankruptcy Rule 3001(e)(2) by Nationstar Was Not Impossible Because the Case Had Been Closed;
K. That In Order to Change the Payee and/or Payment Address for the Mortgage Claim Either (1) Nationstar had to File a Transfer of Claim or (2) Citimortgage was Required to Amend the Proof of Claim by Section 10.07 of the Chapter 11 Plan.

V. Judicial Notice……… …………………………………………………….52

Prayer……………………………..…………………………………………….52

**Table of Citations**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454 (Tex. App.-Houston [14th Dist.] 2000, pet. denied)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Central Va. Comm. College v. Katz*, 546 U.S. 356 (2006)

*Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460 (5th Cir.2013)

*Custis v. U.S.*, 511 U.S. 485 (1994)

*Daniels v. U.S.*, 532 U.S. 374 (2001)

*Farmers Grp. v. Geter*, 620 S.W.3d 702 (Tex. 2021)

*Ford Motor Credit Co. v. Franceschini* (*In re Franceschini*), Case No. 10-30550, 3 (Bankr. S.D. Tex. Jan. 12, 2012)

*Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734 (Tex. 1990)

*Hous. Expl. Co. v.Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462 (Tex. 2011)

*Houston Prof'l Ass'n v. City of Houston*, 812 F.3d 443 (5th Cir. 2016)

*Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651 (2006)

*Huffines v. Swor Sand & Gravel Co., Inc.*, 750 S.W.2d 38 (Tex. App.—Fort Worth 1988, no writ)

*In re Alvarado*, Case No. 10-01208 (Bankr. D.D.C. May 4, 2020)

*In re Applications for Unclaimed Funds*, 341 B.R. 65, 72 (Bankr. N.D. Ga. 2005)

*In re Christopher*, Case 06-42452 p. 3 (Bankr. N.D. Ga. March 30, 2012)

*In re Good*, Case No. 08-40955 (Bankr. E.D. Tex. March 30, 2010)

*In re Johnson*, 402 B.R. 851 (Bankr. N.D. In. 2009)

*In re Mullican* 417 B.R. 389 (Bankr. E.D. Tex. 2008)

*In re Sischo*, Case No. 10-08600 (Bankr. W.D. Mich. Jul. 30, 2014)

*In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr. N.D. N.Y. 1989)

*Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 339–40 (Tex. App.—Eastland 2009, no pet.)

*Kocher v. Dow Corning Corp.*, 132 F.3d 1225 (8th Cir. 1997)

*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1112 (9th Cir. 2000)

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 547 (1986)

*Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990).

*Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594 (5th Cir.1977).

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950)

*Parke v. Raley*, 506 U.S. 20, 29 (1992)

*Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991)

*Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004)

*Philips v. McNease*, 467 S.W.3d 688 (Tex. App.—Houston [14th Dist.] 2015, no pet.)

*Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990)

*Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir. 1987)

*Solvent Underwriters v. Furmanite*, 282 S.W.3d 661, 669-70 (Tex. App. 2009)

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004)

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.2005)

*Tyler v. PHH Mortg. Corp.*, Case No. 19-03007 (N.D. Tex. Sep. 4, 2020)

*United States v. Locke*, 932 F.3d 196 (4th Cir. 2019)

*United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010)

*U.S. v. Addonizio*, 442 U.S. 178 (1979)

*Voorhees v. Jackson*, 35 U.S. (10 Pet.) 449, (1836)

*Wyatt v. United States*, 591 F.2d 260(4th Cir. 1979)

<u>Rules</u>

Federal Rule of Procedure Rule 25(c)

Bankruptcy Rule of Procedure Rule 3001(e)(2)

Bankruptcy Rule of Procedure Rule 3022

<u>Statutes</u>

11 U.S.C. § 350(a)

11 U.S.C. § 362(c)(1)

11 U.S.C. § 1115

11 U.S.C. § 1123(a)(2-3)

11 U.S.C. § 1126(f)

11 U.S.C. § 1141(b)

11 U.S.C. § 1141(d)(1)

11 U.S.C. § 1141(d)(5)

11 U.S.C. § 1306(a)

11 U.S.C. § 1327(b)

28 U.S.C. § 1334(e)

<u>Other Authorities</u>

Restatement (Second) of Judgments: Effect of Judgment Concerning Property Transferred While Action is Pending Servitudes § 44 (Am. Law Inst. 1982)

Restatement (Second) of Contracts: Discharge by Supervening Impracticability § 261 (1981)

## I. Statement of Facts

Parties' Interests in Mortgage

1. Freddie Mac was owner/investor of the mortgage at the time Debtor filed Case 11-41092 and maintained that status until March 2022 when it sold, assigned, or transferred that interest to U.S. Bank. (App. p. 4 ¶¶ 4 – 6).
2. Citimortgage was the servicer of the mortgage at the time Debtor filed Case 11-41092 and was authorized by Freddie Mac to file the proof of claim. Citimortgage retained an interest in the mortgage throughout the Chapter 11 proceeding having only assigned sub-servicing rights to Nationstar. (App. p. 147, Exhibit 72)

3. Nationstar became the mortgage servicer in on August 2016, acting as sub-servicer to Citimortgage. Nationstar remained the servicer throughout the remained of Case 11-41092. (App. p. 539).

4. On June 27, 2017, Nationstar representative Amy Parker told Debtor via phone that it was a Freddie Mac loan, that Citimortgage was the holder of the note, and that Nationstar was servicing the note for Citimortgage. (Exhibit 72).

## II. Statement of Questions Presented

The overall question presented is:

1. Should U.S. Banks' claim be disallowed because it is unenforceable against the Debtor and property of the Debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured?

To prevail on the overall question, Debtor must prevail on the affirmative claims in Question 2 and either Question 3 or 4.

2. Was there any amount of the mortgage debt under Citimortgage's proof of claim that was not required to be paid under Debtor's Chapter 11 Plan?
3. Is U.S. Bank precluded from bring a claim on any debt included in Debtor's Chapter 11 Plan by Res Judicata (Claim Preclusion)?
4. Is. U.S. Bank precluded from relitigating whether Debtor Made all mortgage payments required of him under the plan by collateral estoppel?

Affirmative Defenses

For U.S. Bank to prevail, it must either (1) prevail on question 2 (this is not an affirmative defense, but a negation of one of the elements required for Debtor's affirmative claim) or (2) prevail on its—as yet unpled—Rule 60(b)(4) constitutional notice claim asking this Court to

relieve U.S. Bank from the Order of Discharge which would prevent Debtor from prevailing on Questions 2 and 3. Debtor anticipates a Rule (60)(b)(4) claim to be pled, but presents Question 5 in the event U.S. Bank fails to pled it or include it in their response to this motion.

5. Is U.S. Bank precluded from raising the issue of constitutional notice if it does not plead a Rule 60(b)(4) affirmative defense in an amended response to Debtor's objection to claim or in a response to this motion?

In the event, U.S. Bank does plead this affirmative defense, Debtor presents Questions 6 – 10.

6. Is U.S. Bank is precluded by res judicata because Nationstar could and should have raised any lack of notice issue in the prior case or appealed that case?
7. Is Debtor entitled to a dismissal of U.S. Bank's Rule 60(b)(4) affirmative defense because U.S. Bank cannot make a showing sufficient to establish that Nationstar did not have constitutional notice?
8. Did Nationstar have actual notice of the pendency of the action in time to afford them an opportunity to present their objections?
9. Did Nationstar have notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections because the means employed by debtor to provide notice to Nationstar was such as one desirous of actually informing the absentee might reasonably adopt to accomplish it?
10. Was Nationstar's constitutional notice rights satisfied because of its relationship to Freddie Mac and Citimortgage because of the notice given to Citimortgage?

Debtor need only prevail on either Question 5, 6, 7, 8, 9 or 10 to defeat any Rule 60(b)(4) affirmative defense.

There are several pertinent sub-issues that must be addressed in deciding the questions presented above. For clarity, and to reduce the issues at trial, Debtor requests the Court to answer the following questions.

11. Was Bankruptcy Rule 3001(e)(2) inapplicable at the time of the transfer of servicing?

12. Was Nationstar's meaningful compliance with Rule 3001(e)(2) impossible?

13. Did the Plan Require That In Order to Change the Payee and/or Payment Address for the Mortgage Claim Either (1) Nationstar had to File a Transfer of Claim or (2) Citimortgage was Required to Amend the Proof of Claim by Section 10.07 of the Chapter 11 Plan.

## III. Standards For Summary Judgment and Estoppel

### *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.

The entry of summary judgment is inappropriate where there exists a genuine and material issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. *Id.* at 248. A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts" to prevent its entry. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586–587 (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. *Anderson v. Liberty Lobby, Inc.*, at 252.

*Estoppel*

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466–67 (5th Cir.2013) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.2005)). True res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, while collateral estoppel "precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 596 (5th Cir.1977). Federal law determines the res judicata effect of a prior federal court judgment. *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir. 1987)

## IV. Argument

**A. Question 1 - U.S. Banks' claim should be disallowed because it is unenforceable against Debtor or his property.**

In response to an interrogatory, U.S. Bank states that its claim is in rem. It seeks to enforce a lien against the property, not hold Debtor individually liable. U.S. Bank acknowledges that Debtor's personal liability was discharged. However, in order to enforce a lien you must also have a debt. Debtor asserts that (1) the entire mortgage debt was provided for under the plan (Question

1), (2) U.S. Bank is precluded from bringing a claim based on an outstanding debt, and (3) relitigating that the entire debt was paid under the plan.

**B. Question 2: Debtor's Chapter 11 Plan Required The Entire Mortgage Debt be Paid Under the Plan**

Debtor requests this Court to construe the terms of his Chapter 11 Plan and grant a finding that Debtor was required to pay the full amount of the mortgage claim under the Plan--not just the arrearage—such that upon completion of the payments required under the Plan the mortgage debt was fully satisfied.

A bankruptcy plan shall specify any class of claims that is not impaired under the plan. 11 U.S.C. 1123(a)(2). A bankruptcy plan shall specify the treatment of any class of claims or interests that is impaired under the plan. 11 U.S.C. 1123(a)(3).

Here, Section 3.3 of Debtor's Plan provided for ten classes of claims and noted that the treatment and impairment status for each class was provided in the following ten sections.

> 3.3. Classified Claims and Interests. Claims are classified into the following 10 Classes, and details on the treatment of each class of claims are provided below. Each class is noted as to its impairment and to which class its vote will be included in. Eligibility to vote shall be determined in accordance with U.S.C. §1126.

Debtor's mortgage claim was treated is Section 3.32 as follows:

> 3.32. Class Two – Secured Claim of Citi-Mortgage. (Individual Debtors' homestead at 2451 Elm Grove, Wylie, Collin County, Texas) **The Allowed Secured Claim of CitiMortgage on the Debtors' home shall be paid in accordance with the existing contract with CitiMortgage. All terms of the pre-petition contract remain unchanged except as modified herein and will be considered current upon confirmation. The Arrearage Amount of $1,065.31 shall be paid in regular monthly payments over a period not to exceed 24 months from the Effective Date.** The arrearage claim shall accrue interest from the effective date until paid in full. Arrearage payments shall be applied exclusively to arrearage claim. Citi-Mortgage shall retain their lien until their Allowed Secured Claim including Arrearage is paid in full. **Class Two is impaired and is allowed to vote in Class 2.** (emphasis added).

This plan section constitutes a new, enforceable promise to pay the amount of the allowed secured claim—separate and distinct from the original obligation to pay the mortgage debt. In detailing this new obligation, the treatment under the plan starts by generally incorporating the terms of the existing obligation, but only to the extent that the plan does not (1) provide contradictory terms or (2) provide additional non-contradictory terms. The language shows an intent to pay the entire claim under the Plan in a manner that changed some of the terms of the obligation but left many intact. Instead of repeating the unchanged terms in the treatment section, the Plan incorporated those unaltered terms by reference.

Here, U.S. Bank contends in its *Response To Debtor's Objection To U.S. Bank's Proof Of Claim* that "Debtor's confirmed Chapter 11 Plan did not treat Secured Creditor's claim as a total debt claim and did not pay the claim in full." (DOC 76 ¶17). U.S. Bank further pleads "Debtor's Confirmed Chapter 11 Plan in BK Case No. 11-41092 specifically stated that Debtor **will** pay the secured claim in accordance with the existing contract and all terms will remain unchanged, except for payment of the minuscule pre-petition arrearage of $1,065.31." (DOC 76 ¶16) (emphasis added).

U.S. Bank apparently argues that the plan only required payment of the $1,065.31 arrearage and provided for payment of the remainder of the mortgage debt (the non-arrearage portion) outside the plan.

Debtor concedes that it is possible to treat a fully secured claim outside of a Chapter 11 Plan. Several court opinions have hypothesized such a situation. The Bankruptcy Code only requires that a plan specify treatment of a claim if that class of claims is impaired; if a claim is specified as not impaired, then it is not necessary to provide treatment of the claim at all. See 11 U.S.C. 1123(a)(2-3). Here, the situation is more complicated because the Debtor needed to cure a

default under the mortgage. Still, Section 1124 provides that a plan may cure a default and still leave the claim unimpaired if the plan does not "otherwise alter the legal, equitable, or contractual rights to which such claim entitles the holder of such claim." Debtor further concedes that, in such an instance, a plan would have to provide terms for the arrearage portion of the claim

### *In Accordance With Existing Contract ≠ Outside the Plan*

U.S. Bank asks the Court to interpret "in accordance with the existing contract" as "outside the plan." Although the Bankruptcy Code only requires a plan to specify the treatment of impaired claims, there is no prohibition of treating unimpaired claims under the plan. See 11 U.S.C. 1123(a)(3)(requiring that a plan "specify the treatment of any class of claims or interests that is impaired under the plan"). See also *In re Johnson*, 402 B.R. 851 (Bankr. N.D. In. 2009) ("[I]t is easy to imagine a Chapter 11 plan that could last for decades. All it would take for that to happen is for a debtor to have a 20 to 30 year home mortgage (something that is not at all unusual) and for the confirmed plan to provide that the mortgage debt **will be paid according to its terms**.")(emphasis added.) "The common meaning of "accordance" is "agreement," and the phrase "in accordance with" typically refers to an instruction or rule." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1112 (9th Cir. 2000)(citation omitted).

U.S. Bank's pleading misquotes the Plan in three ways to make this a closer call, pleading that the plan "specifically stated that Debtor **will** pay the secured claim in accordance with the existing contract and all terms will remain unchanged, except for payment of the minuscule pre-petition arrearage of $1,065.31."

First, Section 3.32 does not state that the Debtor will make any payment. This Section is silent on the identity of the Payor with regard to both the arrearage portion as well as the non-arrearage portion. ("The Allowed Secured Claim . . . shall be paid . . . The Arrearage Amount of

$1,065.31 shall be paid.“ Since the same format was used in relation to each payment, the proper construction is that the payor is the same for both payments. Section 10.10 provides for a disbursing agent to make the distributions required by the plan. Although Debtor is the original named as disbursing agent, the plan contemplates that others may be appointed to act as disbursing agent. [1]

Second, the plan actually uses the term “shall” instead of the term “will” in relation to both the payment of the arrearage portion as well as the non-arrearage portion. “Shall” means “1. has a duty to; more broadly is required to <the requester shall send notice> <notice shall be sent>.” (BLACK’S LAW DICTIONARY 689 (Fourth Pocket Edition 2011). Since the same format was used in relation to each payment, the proper construction is that the Plan imposed the same duty upon the disbursing agent to pay both payments. U.S. Bank’s contention would ask the Court to construe “shall” as imposing a duty in relation to the arrearage payment and then construe “shall” as “will” (used to express futurity) in relation to the non-arrearage payment.

Third, Nationstar incorrectly contends that the only modification to the existing contract was regarding the arrearage claim payments when it pled “in accordance with the existing contract and all terms will remain unchanged, except for payment of the minuscule pre-petition arrearage of $1,065.31.” The Plan actually stated “in accordance with the existing contract with CitiMortgage. All terms of the pre-petition contract remain unchanged except as modified herein and will be considered current upon confirmation.” The section does not suggest that the only change was limited to the arrearage treatment.

[1] Plan Section 10.10 “Disbursing Agent. The Debtors will act as disbursing agents for all distributions to be made under this Plan of Reorganization. The disbursements will be made by checks drawn by the disbursing agents. The Debtors shall not be liable for any acts or failures to act in its capacity as disbursing agent in the absence of proof of bad faith or gross negligence. If the Debtors are unable or unwilling to perform the duties of the disbursing agent, the Court shall appoint a successor disbursing agent.”

### *Herein Should Be Construed Broadly*

Section 3.32 uses the phrase “as modified herein” to describe the changes to the existing terms of the contract. “Herein” must be construed broadly to mean “herein this Plan” as opposed to narrowly meaning “herein this section.”

In the hearing on the Motion to Amend, the Bankruptcy Court stated “One of the reasons it's not ambiguous is because under the code, home mortgages and individual cases cannot be modified, except that the past due arrange can be paid over time. And that's exactly what that provision provided for is consistent with the code. If the court would have read it to suggest that there were other modifications in other parts of the plan, those would have been impermissible modifications. So the court would have been interpreting the plan in a way that was inconsistent with the code itself. . . And the Court did not believe, and still does not believe that it was somehow ambiguous.” (App. Exhibit 73 Recording Adv Proc Hearing 2020.09.08 Motion to Alter, at 55:45 – 57:40 mins.)

It was error to construe the plan so as to be consistent with the anti-modification provision because the claim was clearly modified expressly within Section 3.32 itself. Section 3.32 specifically states that “Class Two is impaired and is allowed to vote in Class 2.”. This is clear notice that the plan was overriding the anti-modification clause.

The Bankruptcy Court concluded that the “only modification in section 3.32 related to an arrearage, which the Chapter 11 plan allowed the Wigingtons to pay over 24 months.” However, such a modification would not impair CitiMortgage’s claim under Section 1124 meaning that the impairment noted in Section 3.32 must come from a part of the Plan outside of Section 3.32, meaning that “herein” must be construed to mean “this document.” If the claim was impaired, and Section 3.32 did not impair the claim, obviously some provision outside of Section 3.32 must provide the impairment. In that case, “modified herein” must mean “modified here in this plan.”

The Plan does not define the word “herein,” but it is used nineteen times in the Plan. “Although the term "loss" is not defined in the Policy, its meaning can be interpreted from a review of the entire policy.” *Solvent Underwriters v. Furmanite*, 282 S.W.3d 661, 669-70 (Tex. App. 2009) (Citation omitted.). "Words used in one sense in one part of a contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise.” *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736-37 (Tex. 1990) (citation omitted).

Outside of Section 3.32, “herein” is used in nineteen Plan Sections. (1.02, 1.03, 1.05.31, 1.09, 2.31, 3.23, 3.23.A (twice), 3.31, 3.39, 4.22, 5.4, 6.3 (twice), 7.1, 10.03, 10.04, and 10.05 (twice)). (Herein Log, App. 1274) . Using the context in these sections, none of the uses require that the word mean “This Section.” Only six times could the word mean “This Section.” (Sections 2.31, 3.23.A (twice), 3.31, 5.4, and 10.03. However, thirteen uses require the word to mean “This Plan” and all nineteen uses could mean “This Plan.” Construing “herein” to mean “This Plan” allows for one single meaning of the word, construing it to mean “This Section” requires the word to have two meanings which runs contrary to the rule.

This broad interpretation is also supported when consideration is given to the fact that document is a bankruptcy plan. It would be out of the norm to construe the Plan in such a way that the sections relating to claims allowance and objections and to the injunction sections to be inapplicable to the mortgage claim. “While courts will enforce contracts according to their plain meaning, we also cannot be blind to the commercial realities of the context in which the parties were operating. See *Hous. Expl. Co. v.Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (permitting court, in construing contract, to consider the commercial context in which contract was negotiated).” *Farmers Grp. v. Geter*, 620 S.W.3d 702, 710 (Tex. 2021).

Additionally, it would be improper to take into account the current dispute and the fact that a proper construction of the Plan is very detrimental to Nationstar in construing the Plan. The Plan should be construed as of the confirmation date without considering what has occurred subsequently. *Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454, 465 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (holding that an appellate court cannot rewrite the policy or revise its provisions to avert what the parties perceive to be unfavorable consequences that might flow from the court's interpretation and construction).

### *An Impaired Claim Must Be Treated Completely Under the Plan*

The last sentence of Section 3.32 states "Class Two is impaired and is allowed to vote in Class 2." Citimortgage, the claimholder at confirmation, voted to accept the Plan. (EXH 310.)

If U.S. Bank's contention that the Plan required "pay[ment of] the secured claim in accordance with the existing contract and all terms will remain unchanged, except for payment of the minuscule pre-petition arrearage of $1,065.31." were true, the claim would not be impaired. Citimortgage acknowledged the impairment of the claim when it voted to accept the plan. A creditor is entitled to vote on a plan only when its claim is impaired. See 11 U.S.C. §1126(f) (providing conclusive presumption that unimpaired classes have accepted the plan).

A bankruptcy plan shall specify the treatment of any class of claims or interests that is impaired under the plan. 11 U.S.C. 1123(a)(3).

### *Contemporaneous Documents Required for Confirmation Show Inclusion In the Plan*

The Debtor's schedules also indicate that the intent was to include the mortgage debt in the Plan. On Amended Schedule J filed March 9, 2012, Debtor listed $2,057.13 for Item 1, Rent or home mortgage payment (include lot rented for mobile home). (Amended Schedule J, App. p. 158)

On Amended Schedule J, filed on August 17, 2012, Debtor instead of listing a dollar amount for Item 1, Rent or home mortgage payment (include lot rented for mobile home), Debtor indicated "In Plan." (Amended Schedule J, App. p. 159). The August 17, 2012 version was the latest on file as of confirmation.

Further indication of the intent to include the mortgage debt in the Plan is shown in Exhibit B to the Plan. This Exhibit was referenced in Section 4.3. of the Plan labelled "Feasibility." The Exhibit indicates that Class 2A – Citimortgage Arrearage would be paid $46.74 per month for 24 months and Class 2B – Citimortgage would be paid $2,243.00 per month. Both these classes were included in the section of the exhibit labelled "Plan Payments." (Operating Projections, App. pp. 202-4).

Citimortgage acknowledged that then entire claim was treated under the Plan by voting to accept the Plan in the amount of $167,453.92. (Citimortgage Ballot, App. p. 196).

*No Indicia of Treatment Outside*

"In accordance with" is necessary to treat a claim outside the plan, but, alone, is not sufficient to treat a claim outside the plan. Section 3.32 does not include any clear indications of an intent to pay the claim outside the plan. The Chapter 13 form plan promulgated by the prior court includes examples of such language.

> On the Petition Date, the Debtor owed the following claims secured only by a security interest in real property that is the Debtor's principal residence. The listed monthly payment amount is correct as of the Petition Date. Such mortgage claims (other than related Cure Claims addressed in § 3.2), shall be paid directly by the Debtor in accordance with the pre-petition contract, including any rate changes or other modifications required by such documents and noticed in conformity with any applicable rules, as such payments become due during the Plan Term. The fulfillment of this requirement is critical to the Debtor's reorganization effort. Any failure by the Debtor to maintain payments to a mortgage creditor during the Plan Term may preclude confirmation of this Plan and,absent a subsequent surrender of the mortgage premises, may preclude the issuance of any discharge order to the Debtor under § 1328(a). TXEB Local Form 3015-a [eff. 12/2017].

https://www.txeb.uscourts.gov/sites/txeb/files/TXEB%20Local%20Form%203015-a_Ch%2013%20Plan%20Form_rev%201114.pdf (last visited October 10, 2024.)

Here, the Debtor's Plan specified that that the claim was impaired and specified the treatment afforded the claim in compliance with 11 U.S.C. §1123(a)(1-2). The largest portion of the claim was paid largely consistent with the pre-petition obligation and the arrearage claim was paid in regular payments over 24 months. Together, these provided payments that satisfied the claim in full.

This new obligation under the Plan incorporated some of the terms of the original contract (i.e. the note and deed of trust.) These included terms which other provisions of the Chapter 11 did not modify—such as the maturity date, the interest rate, the monthly payment amount, the requirement to make escrow payments for insurance and taxes.

However, this new obligation did not purport to pay the true amount of the mortgage debt at the time of the petition, it required debtor to pay the amount of the allowed secured claim.[2] These two amount should have been the same, but it seems that Citimortgage possibly made a mistake on their claim form. Either that, or they made a mistake on the amount of the claim they stated on their ballot.

Outside of Section 3.32, the Plan modified many portions of the pre-petition obligation. Section 6.3 provided that, with respect to the mortgage claim, the Debtors were released from any liability or causes of action based upon or related to such Claims except as provided under the Plan. Section 8.4 provided for an injunction against any enforcement of the pre-petition obligation.

[2] These two amounts should have been the same, but it seems that Citimortgage possibly made a mistake on their claim form. Either that, or they made a mistake on the amount of the claim they stated on their ballot. This issue will arise if there is a need to establish the amount of any claim allowed.

Section 10.9 required the creditor to provide a notice of default 30 business days prior to beginning to enforce the foreclosure rights in the deed of trust.

**C. QUESTION 3 - U.S. Bank's Mortgage Debt Claim is Barred by Res Judicata (Claim Preclusion)**

Under the federal test, a claim is precluded when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). All four elements are met here.

**Parties in Privity**

The debtor is a party in both actions. Freddie Mac was the owner/investor of Debtor's mortgage at the initiation of Debtor's Chapter 11 case. Citimortgage filed the proof of claim for Debtor's mortgage as authorized by Freddie Mac. (Notice of appearance, App. 147). No transfer of claim or change of notice address or payment address was filed and Citimortgage was the creditor of record with regard to the mortgage proof of claim at all times during the proceeding. (Docket, App. pp. 61-100.) Nationstar became a sub-servicer of the mortgage in August 2016. (Notice of Servicing Transfer App. p. 539.) Citimortgage retained an interest in the mortgage as Nationstar was acting as sub-servicer to Citimortgage. (SOF #4.) Freddie Mac and Citimortgage held interests in the mortgage concurrently at the start of the case and Freddie Mac, Citimortgage, and Nationstar held interests in the mortgage concurrently at the time of the discharge proceeding.

The deed of trust was held by the following in succession: Citimortgage, Nationstar, Select Portfolio Servicing, and, current holder, U.S. Bank. (Proof of Claim pp. 52-58.)

The chain of mortgage servicers is: Citimortgage, Nationstar, Select Portfolio, and, currently, Shellpoint. (Notices of Servicing Transfers pp. 539, 1239, 1235.)

The chain of owners/investors is: Freddie Mac, and, currently, U.S. Bank. (SOF 1)

U.S. Bank is the creditor of record here, but both U.S. Bank and Shellpoint Mortgage Servicing have appeared in this case.

> Privity has been described as nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." Southwest Airlines, Inc. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977) (citation omitted). For res judicata purposes, this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit. See Howell Hydrocarbons, supra, 897 F.2d at 188; Southwest Airlines, supra, 546 F.2d at 95.
>
> Under the rubric of adequate representation, federal courts have consistently held that a non-party is bound if he authorized a party in the prior suit to represent his interests.

*Meza v. General Battery Corp*., 908 F.2d 1262, 1266 (5th Cir. 1990). In *Tyler*, the court described who parties with interest in mortgages are in privity.

> "’[T]he relationship between a mortgage holder, a mortgage servicer, and a mortgage lender's nominee is generally sufficient to establish the privity needed for res judicata.’ *Bellot v. Wells Fargo Bank, N.A.*, 2014 WL 2434170, at *2 (S.D. Tex. May 29, 2014) (citing *Maxwell*, 544 F. App'x at 473). Because federal courts have deemed non-parties succeeding a party's interest in property and non-parties whose interests were adequately represented by an original party sufficiently close relationships to be in privity with the original parties, the Court concludes PHH is in privity with Deutsche Bank. See *Sw. Airlines Co.*, 546 F.2d at 95 (citations omitted); see also *Davis v. Ocwen Loan Servicing LLC*, 2020 WL 1910137, at *5 (N.D. Tex. Jan. 27, 2020) (citing Russell, 962 F.2d at 1174) (finding mortgagee and servicer are in privity), adopted by 2020 WL 880855 (N.D. Tex. Feb. 24, 2020). Therefore, Plaintiff's present lawsuit involves identical parties, or parties in privity with identical parties, to her five previous lawsuits. Because PHH and Deutsche Bank are in privity, the Court need not consider whether Ocwen and PHH are also in privity. Accordingly, the first element is satisfied.”

*Tyler v. PHH Mortg. Corp.*, No. 3:19-cv-03007-C-BT (N.D. Tex. Sep. 4, 2020). Thus, U.S. Bank and Shellpoint are in privity with Freddie Mac, Citimortgage, and Nationstar.

**Court of Competent Jurisdiction**

The prior court had subject matter jurisdiction pursuant to 28 U.S.C. §1334 and the Eastern District Court's order referring proceedings under Title 11 and related proceedings to the bankruptcy court pursuant to 28 U.S.C. §157(a). The entry of a discharge order and an objection to the entry of a discharge are core proceedings under 28 U.S.C. § 157(b)(2)(O).

The prior court had personal jurisdiction over the Debtor through his filing of the bankruptcy petition. Debtor's principal place of business was in Collin County for more than 180 days prior to his filing of the bankruptcy petition for Case 11-41092. (Affidavit ¶ 3, App. p. FIX). The prior court obtained personal jurisdiction over Citimortgage when it filed its proof of claim. The prior court obtained personal jurisdiction over Nationstar when it filed a request for notices in the case.

It is important to note that the prior court also had in rem jurisdiction, in addition to personal jurisdiction. The Court had in rem jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate pursuant to 28 U.S.C. §1334(e). This in rem jurisdiction extended to Debtor's discharge proceeding. See *Ford Motor Credit Co. v. Franceschini (In re Franceschini*), CASE NO: 10-30550, 3 (Bankr. S.D. Tex. Jan. 12, 2012) ("The right to a discharge is established by the Bankruptcy Code and is central to the public bankruptcy scheme. See *Katz*, 546 U.S. at 353 (including a discharge among the '[c]ritical features' of a bankruptcy proceeding). . . See *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ('A bankruptcy court is able to provide the debtor a fresh start in this manner . . . because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.'). Determinations of whether a debtor meets the conditions for a discharge are integral to the bankruptcy scheme, and bankruptcy courts have the authority to make such determinations

pursuant to its in rem jurisdiction. See *id*. ('The discharge of a debt by a bankruptcy court is similarly an in rem proceeding.').")

**Final Judgment on the Merits**

The preclusive judgment, the order granting a discharge, was issued on December 17, 2017 by the U.S. Bankruptcy Court for the Eastern District of Texas (the "prior court"). (Discharge Order, App. p. 266) The grant of a discharge disposes of a discrete issue within the larger bankruptcy proceeding. See *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657, n.3 (2006) (Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.") (internal quotation marks and emphasis omitted). The time to appeal has long passed and no appeal was ever filed. Accordingly, the judgment has become final.

The discharge order was a final judgment on the merits. Prior to issuing a discharge to an individual Chapter 11 debtor, Section 1141(d)(5) requires the court to hold a hearing to determine whether all payments under the plan had been completed. Debtor submitted an affidavit stating that all payments under the plan had been tendered. In its Notice of Intent to Issue Order of Discharge (App. p. 255), the Court noted Debtor's submission of this affidavit and instructed creditors that the Court would deem that all payments had been made unless they raised an objection.

**Same Claim or Cause of Action**

Federal courts "apply a transactional test to determine 'whether two suits involve the same claim or cause of action.' 'The transactional test focuses on whether the two cases 'are based on 'the same nucleus of operative facts.' It is the 'nucleus of operative facts, rather than the type of

relief requested, substantive theories advanced, or types of rights asserted' that defines the claim." *Houston Prof'l Ass'n v. City of Houston*, 812 F.3d 443 (5th Cir. 2016) (citations omitted).

The mortgage proof of claim filed in the prior case and the mortgage proof of claim filed in the present case are both based on the same note and same deed of trust. (App. pp. 8 – 60).

The claim now asserted by U.S. Bank in its proof of claim in this case is that same claim that Citimortgage or Nationstar should have asserted in the prior case—that the payments required by the Chapter 11 plan with regard to the mortgage debt had not been completed at the time the order of discharge was granted. Citimortgage or Nationstar should have brought this claim at that time, neither they, nor U.S. Bank should be given another bite at the apple.

**D. QUESTION 4 - U.S. Bank is Barred from Relitigating Whether Debtor Made All Mortgage Payments Required Under the Plan by Collateral Estoppel (Issue Preclusion) (400)**

Federal collateral estoppel depends on three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). All three elements are met here.

**Identical Issue**

The issue previously litigated is whether "debtor has actually completed all payments for which such debtor was designated to act as the disbursing agent under the confirmed Chapter 11 plan."

**Issue Actually Litigated**

Pursuant to the Provisional Close Order and the local rules, in the prior suit Debtor filed a Notice of Plan Completion in which Debtor declared that "I have tendered all payments to creditors required to be tendered by me under the provisions of the confirmed Chapter 11 plan in this case."

(App. pp. 246-7). In its Notice of Intent, the Court acknowledged this filing, stating "A Notice of Plan Completion has been filed by George D Wigington and Teresa L Wigington, the Chapter 11 Debtor(s), in the above−referenced case. Such Notice verifies to the Court that each of the above−referenced individual debtors in this case has completed all payments under the confirmed Chapter 11 plan and alleges that each of the above−referenced debtors are entitled to an entry of an order of discharge pursuant to 11 U.S.C. Section 1141(d)(5)." (App. pp. 255-6).

The Notice further stated "However, the verification is subject to review by all creditors and parties−in−interest, and other prerequisites to the issuance of a Chapter 11 discharge to an individual debtor may not have yet been fulfilled, including: (1) whether such debtor has actually completed all payments for which such debtor was designated to act as the disbursing agent under the confirmed Chapter 11 plan." The Notice further stated:

> YOU ARE HEREBY NOTIFIED THAT:
> (1) NO HEARING WILL BE CONDUCTED REGARDING THE RIGHT OF THE ABOVE−REFERENCED DEBTOR(S) TO THE ENTRY OF A CHAPTER 11 DISCHARGE ORDER UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON EACH DEBTOR, THE DEBTOR(S)' ATTORNEY, AND THE UNITED STATES TRUSTEE WITHIN THIRTY (30) DAYS FROM THE SERVICE DATE OF THIS ORDER UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.
> (2) IF NO OBJECTION IS TIMELY SERVED AND FILED, ALL PREREQUISITES TO THE ENTRY OF A CHAPTER 11 DISCHARGE ORDER WILL BE DEEMED FULFILLED AND THE COURT SHALL FORTHWITH ISSUE AN ORDER OF DISCHARGE TO SUCH DEBTOR(S) PURSUANT TO 11 U.S.C. SECTION 1141(d).

Thus, the Court reviewed Debtor's affidavit regarding this issue and notified creditors that the issue would be determined—whether or not they chose to respond to the notice.

**Determination of Issue Must Have Been Necessary Part of Prior Judgment**

For individual debtor cases (such as Debtor's prior case) Bankruptcy Code Section 1141(d)(5)(a) requires the court to hold a hearing after notice to determine whether an individual

debtor has completed all payments under the plan prior to granting a discharge.[3] Thus, the issue was a necessary part of the judgment and the grant of a discharge.

**E. Question 5 - U.S. Bank is Barred from Raising the Issue of Lack of Constitutional Notice Unless It Pleads Such Claim in Response to This Motion.**

Debtor's preclusive claims do not require a showing of notice to Nationstar or even to Citimortgage as part of the prima facie defense. The discharge order is entitled to a presumption of regularity. See *United States v. Locke*, 932 F.3d 196, 198 (4th Cir. 2019) ("This presumption is 'not easily overcome[.]' *Wyatt v. United States*, 591 F.2d 260, 265 (4th Cir. 1979). Its origin lies in one of our legal systems oldest axioms: 'that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears.' *Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, (1836). As early as the 19th century, there was 'no principle of law better settled' than the presumption of regularity. *Id.* The rule has stood the test of time because it vindicates 'the interest in promoting the finality of judgments,' which remains an important consideration. *Daniels v. U.S.*, 532 U.S. 374, 378, (2001). If we allowed the presumption to erode we would be making "[i]nroads on the concept of finality,' which would 'tend to undermine the confidence in the integrity of our procedures.' *U.S. v. Addonizio*, 442 U.S. 178, 184, n.11, (1979). '[I]nevitably,' such a rule would 'delay and impair the orderly administration of justice.' *Custis v. U.S.*, 511 U.S. 485, 497 (1994). The presumption has long been understood to shield 'every judgment or decree' from searching inquiry by later courts. *Voorhees v. Jackson*, 35 U.S. (10 Pet.) 449, 472 (1836)(emphasis added). It applies 'even when the question is waiver of constitutional rights,' *Parke v. Raley*, 506 U.S. 20, 29 (1992) (citation omitted).

[3] "In a case in which the debtor is an individual—(A)unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."

The sole means for Nationstar, or any of its successors-in-interest, to seek relief from that judgment is via a Rule 60(b)(4) motion which is incorporated into bankruptcy proceedings by Bankruptcy Rule 9024. Lack of notice is an affirmative defense and must be pled and proven. The prior court apparently[4] raised the notice issue sua sponte. To do that the prior court had to disregard Debtor's allegations in the Amended Petition alleging that Nationstar had actual notice.

> 86. On November 1, 2017 Debtor filed his Notice of Plan Completion and §522(q) Statement by Individual Debtor ("Notice of Plan Completion") in his Chapter 11 Case [DOC 430 Case 11-41092] . . .
>
> 87. On November 1, 2017 Debtor filed his Post-Confirmation Report ("Post-Confirmation Report") [DOC 431 Case 11-41092] . . .
>
> 88. On November 3, 2017 the Court issued a Notice of Intent to Issue Order of Discharge For An Individual Debtor in a Chapter 11 Case ("Notice of Intent to Issue Discharge") [DOC 433 Case 11-41092].
>
> 89. Though notice of these filings was provided to Citimortgage, as claimholder, Nationstar was aware of these filings. Debtor attempted to log in to his online account on November 7, 2017 and found that his access had been terminated. A true and correct copy of a screenshot is attached as EXHIBIT 61.
>
> 90. Nationstar's knowledge of these filings is also shown by the fact that it did not issue mortgage statements in November 2017, December 2017, or January 2018. Dates which coincide with the period of time the case was reopened for discharge. 195. Plaintiff had access to his online Nationstar account from at least early 2017. This continued up until he filed the Post-Confirmation Report and the Notice of Plan Completion on November 1, 2017.
>
> 196. Plaintiff was denied access to his online account when he logged in on November 7, 2017. This was due to an active bankruptcy according to the website notice.

On the other hand, Nationstar and SPS did not plead lack of notice in any pleading or offer any evidence. The only evidence before the prior court was the Amended Petition and its attachments. There was pleading or evidence that Nationstar was not directly served notice by the

---

[4] The prior ruling does not expressly say why the estoppel defenses were dismissed. Debtor interprets it as a Rule 60(b)(4) finding. However, the prior court only addressed notice in footnote 4 and spent much more space explaining why a discharge order does not eliminate a lien.

court clerk, but there was no evidence that Citimortgage did not comply with its contractual obligation to forward all correspondence related to the mortgage to Nationstar, the transferee, after the transfer.

The prior court's election to raise the issue sua sponte was not a harmless error. The prior court did hear Debtor's motion to amend so surprise is not the harm. Assume, arguendo, the Nationstar's and their attorneys knew they had actual notice and that was why they did not plead it. When the prior court took up the issue, it appears to have assumed no actual notice—although the prior ruling does not discuss actual notice. This and the wording of the prior ruling allowed Nationstar and SPS to then defend the finding of constitutional notice by referring to "no proper notice" and "no constitutional notice." Debtors attempts to direct the issue to actual notice went unheard. Debtor thereby requests this Court require a pleading to prevent another such event.

**F. Question 6 - Any Rule 60(b)(4) Constitutional Notice Affirmative Defense is Barred by Res Judicata**

Here, U.S. Bank is precluded from filing to obtain such relief, not because of the time its provided in the rule, but because Citimortgage and Nationstar were a party to the proceeding and had the opportunity to challenge the issue before the prior court or appeal. Citimortgage was a party for the entire proceeding, Nationstar because a party when its attorney filed a request for notices on December 27, 2017—ten days after the entry of the discharge order. Nationstar had four days left in which to timely file a motion for new trial under Rule 9023 or an appeal under Rule 8002(a)(1) based on invalid notice. The time to file an appeal can be extended, if excusable neglect is shown, by filing a motion to extend time within 21 days of the entry of the order. Thus, Nationstar had—at minimum—25 days from the time they filed into the case in which to file a pleading to extend their time to appeal. However, Nationstar knew of the reopen/discharge

proceedings long before they filed into the case. Evidence clearly shows that they knew of the proceedings by November 7, 2017—which gave them 77 days in which to file the appeal.

Neither Citimortgage nor Nationstar appealed the order. Having had the opportunity to appeal the order, neither party—nor their successors-in-interest—seek relief under Rule 60(b)(4). "[A] motion under Rule 60(b)(4) is not a substitute for a timely appeal. *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1229 (C.A.8 1997); see Moore's § 60.44 [1][a], at 60–150." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 270-71 (2010).

The Supreme Court noted that a party is barred from raising a Rule 60(b)(4) claim if that party had knowledge of a constitutional defect during the proceeding and failed to raise it with the court or on appeal. This is with respect to a jurisdictional challenge under Rule 60(b)(4), but the analysis is the same with constitutional notice.

> A court's determination of its own jurisdiction is subject to the principles of res judicata; it generally may not be challenged in a collateral proceeding. . . .This bar applies whenever the party challenging the judgment has the opportunity to raise the jurisdictional issue but fails to do so. . . A number of decisions rendered in other circuits have extended the principles of Chicot County to the analogous context of Rule 60(b)(4) motions. . . . We agree with this approach, at least where, as here, the challenging party was before the court when the order in question was entered and had notice of it and had a full and fair, unimpeded opportunity to challenge it, and the court's jurisdiction, by appeal. Therefore, Picco is now barred from challenging the district court's jurisdiction in a Rule 60(b)(4) proceeding.

*Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990)(citations omitted).

**G. Question 7 - U.S. Bank Cannot Make a Showing Sufficient to Establish that Nationstar did Not Have Constitutional Notice to Support a Rule 60(b)(4) Constitutional Notice Affirmative Defense**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' In our view, the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be ‘no genuine issue as to any material fact,’ since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is ‘entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.‘ *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)

Here, U.S. Bank bears the burden of proof. At the very least, U.S. Bank has the burden of production to overcome the presumption of regularity with regard to the discharge order. The answers to Debtor’s discovery shows that U.S. Bank has no evidence or knowledge that would tend to show that Nationstar did not have actual notice in time to respond.

U.S. Bank produced no documents which related to the issue of notice. (U.S. Bank’s Response to Debtor’s Second Request for Production App. 669-70.)

> 1. All documents that report, describe, summarize, analyze, discuss, evidence, or comment on Citimortgage’s, Nationstar’s, Federal National Mortgage Association’s (“Fannie Mae”), or Federal Home Loan Mortgage Corporation’s (“Freddie Mac”) knowledge or lack of knowledge of the pendency of Debtor’s bankruptcy proceedings during the relevant time period.
>
> We object to this document request to the extent that it seeks information from third parties and information not within the possession, custody, control, or personal knowledge of the Secured Creditor.
>
> 2. All documents that report, describe, summarize, analyze, discuss, evidence, or comment on Citimortgage’s, Nationstar’s, Federal National Mortgage Association’s (“Fannie Mae”), or Federal Home Loan Mortgage Corporation’s (“Freddie Mac”) notice or lack of notice with regard to Document 433 filed in Case 11-41092 in the Bankruptcy Court of the Eastern District of Texas.

> We object to this document request to the extent that it seeks information from third parties and information not within the possession, custody, control, or personal knowledge of the Secured Creditor.
>
> 3. All documents that report, describe, summarize, analyze, discuss, evidence, or comment on Citimortgage's, Nationstar's, Federal National Mortgage Association's ("Fannie Mae"), or Federal Home Loan Mortgage Corporation's ("Freddie Mac") notice or lack of notice with regard to fact that Debtor's Case 11-41092 in the Bankruptcy Court of the Eastern District of Texas was reopened on November 3, 2017.
>
> We object to this document request to the extent that it seeks information from third parties and information not within the possession, custody, control, or personal knowledge of the Secured Creditor.

U.S. Bank was unable to identify any person with personal knowledge of the notice issue.

(U.S. Bank's Response to Debtor's Second Request for Interrogatories App. 688)

> INTERROGATORY NO. 17: Identify any person with personal knowledge of Nationstar's notice or lack therof, with regard to:
> a. The fact that Debtor's Case 11-41092 in the Bankruptcy Court of the Eastern District of Texas was reopened on November 3, 2017,
> b. the pendency of Debtor's bankruptcy proceedings during the relevant time period, or
> c. the filing of Document 433 filed in Case 11-41092 in the Bankruptcy Court of the Eastern District of Texas.
>
> RESPONSE:
> Neither Secured Creditor nor Shellpoint have this information.

During the corporate deposition, U.S. Bank's representative was unable to identify any documents related to the notice issue or anyone with personal knowledge of the notice issue. (Deposition, App. p. 726 lines 10-20.) The representative also stated that they had never asked Nationstar for any such information. (Deposition, App. 726 lines 7-12) U.S. Bank's attorney stated that she did not know if Nationstar had notice. (Deposition, App p. 725 lines 15-20). The representative also stated that Freddie Mac requires its servicers to submit monthly reporting of mortgages involved with bankruptcy. (Deposition, App. p. 726 lines 16-25, p. 727 lines 1-25 and

p. 728 lines 1-14). Both the representative and the attorney refused to answer whether U.S. Bank was contending that Nationstar had no actual notice. (Deposition, App p. 723 lines 9-25, p. 724 lines 1-25, and p. 725 lines 1-20).

All of these questions were within the scope of the subject matter notice provided with the corporate deposition notice.

**H. Question 8 - That Nationstar was Provided Actual Notice**

"'[D]ue process does not require actual notice ...'). Here, United received actual notice of the filing and contents of Espinosa's plan. This more than satisfied United's due process rights." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 272 (2010) (citations omitted.) Here, Nationstar received actual notice which satisfied its due process rights.

There is no question that Nationstar had notice of the discharge proceedings, they appeared in the case filing a request for notices on December 27, 2017, ten days after the discharge order was entered. However, there is clear evidence that it had notice on or before November 7, 2017. When Debtor tried to logon that day to use the online portal to send a copy of the Notice of Intent, his access was denied and the website stated "Because you are involved in an active bankruptcy, we are unable to display your account online. Please call us or have your attorney call us at 888-480-2432 as soon as possible. Our bankruptcy specialists will help you access your account information."[5] The following filings (the "reopening documents") were made as part of the discharge process.

| Filing | Date Filed | Date Served | Service |
|---|---|---|---|
| Annual Status Report | 11/1/17 | N/A | None (still served by Mail and CM/ECF |

[5] Notice is also shown by the fact that Nationstar did not issue a mortgage statement in November 2017. From FEB 2017 to OCT2017, Nationstar issued a monthly mortgage statement each month between the 18th and the 24th day of the month. The fact that Nationstar ceased issuing statements in NOV2017, and did not start issuing statements until FEB2018 (after the final decree was entered closing the case, is evidence Nationstar received notice.

| | | | |
|---|---|---|---|
| Notice of Plan Completion | 11/1/17 | N/A | None |
| Motion To Reopen/ Discharge | 11/1/17 | 11/01/17 | Mail and CM/ECF |
| Order Granting Reopen | 11/3/17 | 11/05/17 | Mail and CM/ECF |
| Notice of Intent Issue Discharge | 11/4/17 | 11/04/17 | Mail and CM/ECF |

So, within six days of the Debtor's filings, Nationstar already had notice of an "active bankruptcy." This was forty days prior to the entry of the discharge order, and 54 days prior to the deadline to appeal or challenge the entry of the discharge order. Thus, Nationstar had actual knowledge of the "pendency of the action" that "afford[ed] them an opportunity to present their objections."

Admittedly, there is no evidence as to which of these filings Nationstar actually received. But given the short time frame in which all these filings were made, the fact that at least one of these filings was received by Nationstar raises the reasonable presumption that all were received by Nationstar. And, certainly enough information was received that put Nationstar on inquiry notice.

**I. Question 9 - That Nationstar was Provided Constitutional Notice Because the Means Employed by Debtor to Provide Notice to Nationstar Was Such as One Desirous of Actually Informing the Absentee Might Reasonably Adopt to Accomplish it;**

In footnote 4, the prior ruling states:

> Nationstar was <u>never served</u> with the two key documents that were the predecessors for the discharge order in this case – the Post-Confirmation Report and the Notice of Intent to Enter Discharge. . . Nationstar was <u>not served</u> with the Wigingtons' Post-Confirmation Report and, therefore, did not <u>receive proper notice</u> of the Wigington's representations to the Court and was not afforded an opportunity to raise an objection prior to the entry of the discharge order.

(Prior Ruling, App. p. 483).

The prior court's analysis consisted solely of whether Debtor complied with the prior court's strained interpretation of the rules of procedure. This was error. Indeed, even a failure to comply with the actual rules is not necessarily a notice violation. The proper standard for this analysis is:

> "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Espinosa* at 272.
> "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . , or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 315 (1950). Assuming, arguendo, that Debtor's knowledge of (1) the assignment of the deed of trust, (2) the notice of servicing transfer made notice Nationstar's due, and (3) that Citimortgage ceased forwarding payments in January and February 2018 made notice Nationstar's due. The means employed by Debtor satisfies due process.

After the transfer, Debtor continued to pay Citimortgage under the assumption that a transfer of claim was forthcoming. For several months, Citimortgage forwarded the payments to Nationstar, this ceased in January 2017. After the first returned payment from Citimortgage in January 2017, Debtor heavily researched the issue and found mountains of cases holding that the proper payee was the transferor until the court substitutes the transferee after a transfer of claim is filed. After 60 days of heavy research, Debtor concluded that—despite the default notices from Nationstar—the proper payee was Citimortgage. Debtor also realized that he was not excused from making payments to someone due to uncertainty. Paying no one was not an option, so Debtor made the February and March 2017 payments to Citimortgage on March 7th. Citimortgage returned that payment also.

Debtor called Nationstar on March 23, 2017[6] and spoke with Nationstar representatives

[6] Debtor incorrectly lists March 23, 2017 in his Amended Petition in the adversary proceeding.

regarding Nationstar's failure to file a notice of transfer of claim. Plaintiff told Nationstar that until and unless such notice was filed, he would continue to send payments to Citimortgage as required by the Chapter 11 Plan. The representative stated that Debtor would need to have his bankruptcy attorney call their bankruptcy department (or maybe their bankruptcy counsel) if he had concerns over the identity of the proper payee and payment address for his mortgage payments.

On June 29, 2017, Debtor filed a suit in Texas district court to stop a pending non-judicial foreclosure. (App. p. 660). Debtor used a process server to serve Nationstar's corporate agent, but also submitted notice of the case and copies of the petition to Nationstar via their online portal because the foreclosure was scheduled for July 4th. On July 5, 2017, Nationstar acknowledged receipt of the notice. (App. p. 662).

In the days before filing the reopening documents on November 1, 2017, Debtor accessed Nationstar's online portal several times to gather payment details for the Annual Status Report. Nationstar was not served any of the reopening documents, because neither Nationstar nor Debtor filed any documents to add them. On November 7th , two days after the Notice of Intent was filed, Debtor tried to log into the online portal to send a copy of the Notice of Intent to Nationstar. That's when Debtor discovered he no longer had access "[b]ecause you are involved in an active bankruptcy, we are unable to display your account online. Please call us or have your attorney call us at 888-480-2432 as soon as possible. Our bankruptcy specialists will help you access your account information.

Debtor was curious as to how Nationstar found out so quick. After searching the Freddie Mac servicing guide, he found Section 7101.13: Funds and correspondence received after Transfers of Servicing. The then current version of this section stated "Within one day of receipt, the Transferor Servicer must deliver to the Transferee Servicer any funds for, or correspondence

regarding, any of the transferred Mortgages and REO received on or after the Effective Date of Transfer." (App. p. 804). As a result, at that time Debtor concluded that Nationstar had actually received the reopening documents, and took no further action relative to providing notice.

Debtor was unable to follow through and actually send the filings to Nationstar via the portal, this would have been absolute proof of actual notice of the filings and their contents. Still, Debtor knew that Nationstar had actual knowledge that the proceeding was reopened and the logical conclusion is that they received the reopening documents forwarded by Citimortgage and had terminated Debtor's online access for that reason.

It is important to note, this consideration of reasonableness of means is when such means are exercised, ex ante, not at the later time when Nationstar failed to timely object.

**J. Question 10 - That Under the Conditions Here, Notice to Citimortgage, the Record Claimholder, Satisfied Nationstar's Constitutional Notice Requirements**

Although Debtor pleads that Nationstar was given constitutional notice and actual notice which satisfied its due process rights, Debtor also pleads that Nationstar itself did not require notice in order for its due process rights to be vindicated. Nationstar's rights were satisfied with the notice undeniably given to Citimortgage and Citimortgage's attorney.

*Concurrent Interests*

At the time of the discharge proceeding, there were three parties with concurrent interests in the Debtor's mortgage—Freddie Mac, Citimortgage, and Nationstar.

Although Freddie Mac, as owner/investor of the mortgage, is the real party in interest; there is no dispute that Citimortgage is permitted to file the proof of claim. *In re Hughes*, 17-52260, n.5, Decided Aug 11, 2020 (Bankr. N.D. Ga.) (A loan servicer is a real party in interest and has "standing to conduct, through legal counsel, the legal affairs of the investor relating to the debt it

services." *In re Freeman*, 446 B.R. 625, 632 (Bankr. S.D. Ga. 2010) (citing *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002)).

When Citimortgage filed the proof of claim in Case 11-41092, it could have listed Freddie Mac as the "creditor" and listed itself in the sections identifying where to send payments and notices as Freddie Mac's servicer (agent). Instead, Citimortgage identified itself as "creditor" and in the notice and payments sections. Freddie Mac received no notices in the proceeding, why is it not proclaiming that its due process rights were violated.

Before August 2017, when Citimortgage and Freddie Mac held interests in the mortgage, judgments were binding on both Citimortgage and Freddie even though only Citimortgage received bankruptcy notices. It was up to Citimortgage and Freddie Mac to designate which party was going to litigate the proceeding. They chose Citimortgage.

After August 2017, when Citimortgage, Freddie Mac, and Nationstar held interests in the mortgage, judgments were binding on Citimortgage, Freddie Mac, and Nationstar even though only Citimortgage received bankruptcy notices. It was up to Citimortgage, Freddie Mac, and Nationstar to designate which party was going to litigate the proceeding. By failing to file a transfer of claim, they chose Citimortgage.

This rule becomes obvious in the reverse. Imagine, if after the Debtor here had suffered an adverse judgment, that he was free to relitigate the claim or issue against Nationstar or Freddie Mac because they were not parties to the proceeding.

### *Authorization and Implied Authorization*

"Under the rubric of adequate representation, federal courts have consistently held that a non-party is bound if he authorized a party in the prior suit to represent his interests." *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). Here, Citimortgage represented in its

notice of appearance that it was authorized to appear on behalf of Freddie Mac by the servicing regulations. In addition, both Citimortgage and its attorney represented that they were representing any assignees of the claim.

On the proof of claim, Citimortgage listed "CITIMORTGAGE, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST" as "Creditor." Under "Name and address where notices should be sent:" Citimortgage listed "CITIMORTGAGE, INC." Under "Name and address where payment should be sent (if different from above):" Citimortgage listed "CITIMORTGAGE, INC." (App. p.8).

The notice of appearance filed by Citimortgage's counsel states "COMES NOW BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, pursuant to Bankruptcy Rules 9010 (b), 2002 (a), (b), 3017 (a), 9007, and files this Notice of Appearance and Demand for Service of Papers as Counsel for CITIMORTGAGE, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST."

This is at the very least implied authorization that Citimortgage will act as agent for notice and agent for payment for any future assignees. This is at the very least implied notice that counsel will represent any future assignees.

### *Interest Transferred During Proceeding*

Substantive law provides that when a transfer occurs during a proceeding, the transferor is bound by the judgment. "A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor.[7]" Restatement (Second) of Judgments: Effect of Judgment Concerning Property Transferred While Action is Pending Servitudes § 44 (Am. Law Inst. 1982).

[7] This rule has two exceptions. The first is irrelevant because it deals with real property and lis pendens, while this cause involves transfer of a note. The second is that the transferee is not bound by the judgment if (1) the transferee

Federal Civil Rule of Procedure incorporate this concept. "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. Rule 25(c). The analogous bankruptcy rule states "If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee." Bankruptcy Rule 3001(e)(2). The differences in these two rules are not related to the binding effect of the judgment on the transferee, the transferee is bound in either case by a judgment against the transferor. While the federal rule does not require anyone to substitute (unless the court deems it necessary), the bankruptcy rule requires that transferee, not the Debtor, to file the substitution. The substitution is deemed necessary in all bankruptcy cases by the rules because it is necessary to permit the transferee to receive plan payments.

The prior ruling purported to burden Debtor with the responsibility for bringing Nationstar in as a party to the proceeding. That was error. It is well known that procedural rules "shall not abridge, enlarge or modify any substantive right." It should be equally evident that a court cannot create local rules that affect substantive rights and that courts cannot construe the rules of procedure to affect substantive rights.

The guiding principle behind these rationales for binding non-parties is that—while the non-party was not in the proceeding—the non-parties interests were represented by a party that had similar interest in protecting rights similar to those of the non-party.

**K. Question 11 - That Bankruptcy Rule 3001(e)(2) Was Still Applicable at the Time That Nationstar Became Servicer**

---

does not have knowledge of the proceeding and (2) the opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action. Here, the is overwhelming evidence provided to Debtor that Nationstar knew of the proceeding 18 months prior to the disputed ruling.

The prior ruling, pp. 13-14, states:

> The bankruptcy estate no longer existed because plan section 3.40 had re-vested the bankruptcy estate in the Wigingtons consistent with 11 U.S.C. § 1141(b), and the Chapter 11 case had been closed consistent with 11 U.S.C. § 350(a) and Bankruptcy Rule 3022. Bankruptcy Rule 3001(e)(2) does not apply after the bankruptcy estate no longer exists and the case is closed.

That is a sweeping statement that cannot be applied to all cases. I agree that Rule 3001(e)2 does not apply in a case not involving an individual after the bankruptcy case no longer exists and the case is closed. If the debtor is not an individual, a discharge is granted upon confirmation and the bankruptcy court has no jurisdiction to determine whether all payments under the plan are completed. The Eastern District Bankruptcy Court describes how confirmation removes both the court's oversight and protection.

> Except in cases involving individual debtors, the code keys the Chapter 11 debtor's discharge and the corresponding termination of the automatic stay to the entry of the confirmation order. See 11 U.S.C. §§ 362(c)(1), 1141(d)(1). "Confirmation of the plan marks the beginning of the reorganized debtor's new financial life. New legal relationships are established and old ones are modified or terminated." *In re Valley Park Group, Inc.*, 96 B.R. 16, 24 (Bankr. N.D. N.Y. 1989) (citation omitted). "Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The [debtor] also is without the protection of the bankruptcy court... Formerly a ward of the court, the debtor is emancipated by [confirmation of] the plan of reorganization." *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991) (emphasis in original).

*In re Good*, Case No. 08-40955 (Bankr. E.D. Tex. March 30, 2010).

In the situation described above, I would concede that Rule 3001(e)2 does not apply after confirmation and the closing of the case. But, here, both premises are wrong and the conclusion is erroneous—even if the premises were correct.

### *Prior court erred in finding estate no longer existed.*

The prior ruling states "The bankruptcy estate no longer existed because plan section 3.40 had re-vested the bankruptcy estate in the Wigingtons consistent with 11 U.S.C. § 1141(b). Section

§ 1141(b) provides that the plan may provide otherwise, and here it did so. Section 3.40 of the Plan states:

> Class Ten – Interests of the Debtors. Class Ten consists of the interests of the Debtors. On the Effective Date, title and ownership of all Property of the Estate shall vest in the Individual Debtors free and clear of any lien, claim or interest of a Creditor or party of interest, except as otherwise specifically provided in the Plan or Order Confirming the Plan. Debtors' disposable income will be dedicated to fund the plan as required.

(Chapter 11 Plan, App. p. 180) (Emphasis added). The prior ruling devoted a single sentence to the analysis of whether the estate still existed and failed to even evaluate the plan provisions. In 2008, the prior court reached the opposite conclusion in a well-reasoned lengthy discussion.

> In this case, the Order Confirming Chapter 13 Plan and Related Orders states: "IT IS FURTHER ORDERED THAT upon confirmation, that all property of the estate shall vest in the Debtor(s) subject to the automatic stay provisions of 11 U.S.C. § 362 until an order of Discharge or Dismissal order is entered." The Court interprets this language to mean that property of the estate existing as of the confirmation date revested in the Debtors at confirmation. With respect to post confirmation property, this Court concludes that the approach adopted by the courts in Harchar and Barbosa, among others, is the most logical reconciliation of §§ 1306(a) and 1327(b). See, e.g., *In re Wetzel*, 381 B.R. 247, 253 (Bankr. E.D. Wis. 2008) (discussing the interpretative tension between §§ 1306(a) and 1327(b)). The estate is not extinguished by confirmation, but rather is comprised of new property acquired by the debtor post-confirmation, whether via inheritance, wages or other means. Under this rule, the Debtors' post-confirmation property, including Horace's inheritance under the Will and the Inherited IRA, was property of their estate at the time of their conversion.

*In re Mullican* 417 B.R. 389 (Bankr. E.D. Tex. 2008) (emphasis added). *Mullican* involved a chapter 13 case, but §§ 1115 and § 1141(b) are almost exact copies of §§ 1306(a) and 1327(b), so the Mullican analysis holds in Chapter 11 individual cases. And considering the language in Debtor's Chapter 11 plan dedicating income to fund the plan, the argument that the estate survived confirmation is even stronger than in *Mullican.*

### *Case had been closed consistent with 11 U.S.C. § 350(a) and Bankruptcy Rule 3022*

The prior ruling found "the Chapter 11 case had been closed consistent with 11 U.S.C. § 350(a)[8] and Bankruptcy Rule 3022[9]." Actually, the provisional close order stated the exact opposite:

> [N]otwithstanding any "substantial consummation" of the confirmed plan . . . 11 U.S.C. §1141(d)(5) now requires that all payments under a confirmed Chapter 11 plan be completed as a prerequisite to the entry of an order of discharge for an individual Chapter 11 debtor. . . Thus, since these actions have not yet occurred in this case, this case has not been "fully administered" under 11 U.S.C. §350 and the entry of a Final Decree is premature and unjustified under the circumstances. However, such circumstances do establish just cause to grant a provisional closing of this case, subject to the subsequent filing by the Debtors of two documents: a Motion to Reopen and a separate Notice of Plan Completion, both to be filed upon the completion of all payments required to be made under the confirmed Chapter 11 plan.
>
> . . . IT IS THEREFORE ORDERED that the above-referenced Chapter 11 case is PROVISIONALLY CLOSED subject to its anticipated re-opening upon the completion of all payments required to be made under the confirmed Chapter 11 plan.

The order clearly states that the case was not closed pursuant to 11 U.S.C. § 350, and that the case was not fully administered under Rule 3022 because (1) plan payments were ongoing and (2) discharges had not been granted.

### *Provisional Close and Final Decree Close are Not Equivalent*

In the hearing on the Motion to Amend, the prior court asked "Are you aware of anything in the code that would suggest that a "provisionally closing" is anything other than a closing of the case subject to reopening as every other case is?"

The Fifth Circuit has explained that an administrative close is nothing more than a stay. "The effect of an administrative closure is no different from a simple stay, except that it affects the

[8] Bankruptcy Code Section 350(a) states "After an estate is fully administered and the court has discharged the trustee, the court shall close the case."

[9] Bankruptcy Rule 3022 states "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

count of active cases pending on the court's docket; i.e., administratively closed cases are not counted as active. See *Lehman v. Revolution Portfolio LLC*,166 F.3d 389, 392 ("This method is used in various districts throughout the nation in order to shelve pending, but dormant, cases.") *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004)

My contention is that the language used in the provisional closing order provide enough context to show that the intent was issue an order that would cease the accrual of the quarterly trustee fee without invoking any of the other typical results of closing a case (termination of the stay §362(c)(2)(A), earnings being property of the estate §1115.) The fact that Judge Parker went to the trouble to substitute a provisional close for a final decree close supports interpretation. If there was no intended difference, why bother? The provisional close order issued in Debtor's case (Provisional Close Order, App. p. 234) has been used in substantially the same form ever since Judge Bill Parker first entered such an order sua sponte whereby he also vacated a final decree he had entered in the case one month earlier. The vacated final decree stated "Ordered that this order constitutes a final decree and this case is closed." (App. p. 1103). The provisional order included the following "The circumstances in this case however, establish just cause to substitute, in lieu of a final decree, a provisional closing of this case." (App. p. 1104). Why would Judge Parker vacate a final decree and substitute a provisional closing is there was no difference?

Debtor contends that the substantive provisions of the bankruptcy code § 362(c)(2), § 554(a), § 1115, etc. are only triggered by a final decree "close." No code section refers to an "administrative close" or "provisional close." Debtors and courts can define those terms. This is contemplated in *In re Alverado:*

> Even though the closing here was a temporary closing, it may still have had the consequences that flow from a closing of the case, including the consequence under 11 U.S.C. § 554(a) of abandoning scheduled property of the estate to the debtors and the consequence under 11 U.S.C. § 362(c)(2) of terminating the automatic stay

> as to acts against the debtors and the debtors' property. I need not decide whether that is the case here, other than to note that a debtor's chapter 11 plan can attempt to bring clarity in that regard by addressing the consequences of a closure.

*In re Alvarado*, Case No. 10-01208 (Bankr. D.D.C. May. 4, 2020)

Debtor's Plan took such an approach. Section 8.1 of the confirmed Chapter 11 Plan states:

> After the case is fully administered to the Debtors' satisfaction, the Debtors shall petition the Court for a Conditional Closure of the case. Upon Order of the Court conditionally closing the case, the U.S. Trustee quarterly fees shall not continue to accrue or be incurred by the Debtors during the time that the case is conditionally closed."

(Chapter 11 Plan, App. p. 186). By only listing one effect of the conditional closing, the Plan excluded other substantive effects of a conditional closing.

*Court was not writing on a blank slate*

This provisional order, although not officially a local form, has been used extensively over the years. (See App. p. 1084-5[10]) and has been interpreted by many debtors, creditors, and the court clerk. These represent course of dealing, course of conduct, and trade usage. The prior court was not free to disregard the standard practice that has developed.

The court clerk has different filing flags for closed (closed) and provisionally closed (close-p) on their dockets. The clerks noted case closed on the docket (after the decree closing the case) on all closed cases and has only done so in two of the 74 provisionally closed cases. The court clerk regularly substitutes transferees for transferors when transfers of claims are submitted in provisionally closed cases.

Creditors routinely file transfers of claims and other notice type documents in provisionally closed cases. (App. pp. 839-44).

*Other uses of 3001(e)(2).*

Notice that Transferee was entering proceeding. Submission to personal jurisdiction of court.

[10] The red rectangles show the case where the standard provisional close order was used.

Substitution of parties. Change in record holder of claim.

> The dictates of Bankruptcy Rule 3001(e)(2) are simple: if a creditor files a proof of claim in a bankruptcy case and such claim is later transferred to another person, then such person—the "transferee"—shall file evidence of the transfer with the court. Then, if the creditor—the presumed or "alleged" transferor—does not object to the transfer, the transferee is substituted for the transferor. As a result, all parties that need to know will know who is holding the claim. This is as basic as it gets. The parties to the dispute here, however, have managed to muddle this simple procedure.
>
> Rule 3001(e) is the mechanism through which the purchaser of a claim (the transferee) steps into the shoes of the seller (transferor). The rule requires that the transferee file notice of the transfer with the court; the transferor receives notice of the transfer and is thus provided with an opportunity to dispute the legitimacy of the transfer, if necessary. This process accomplishes three things: (1) it provides the transferor due process rights of notice and an opportunity to object before its property is transferred to another party; (2) it ensures the claim against the estate is held by its true owner; and (3) it puts the debtor or trustee on notice of the identity of the current true owner.

*In re American Housing Foundation*, 2015 WL 6690025, pp. *1, *3 (Bankr. N.D. Tex. 2015)(Citations omitted)

*Holding that Rule 3001(e)(2) is Inapplicable is Contrary to the Purpose of the Procedural Rules*

Bankruptcy Rule 1001 states "The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code. . . .These rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Without express provisions in the rules stating otherwise, rules are only inapplicable when the rule no longer fulfills its purpose, the rule is impossible to comply with, or when complying with the rule is useless.

Rule 3001(e)(2) is still necessary to secure the just, speedy, and inexpensive determination of every case and proceeding. In *Sischo,* there was an indication of a transfer of an interest in a claim, just like the notice of servicing transfer in Debtor's case. In Sischo, the court notes that it cannot determine whether the transferee is the new owner of the claim or if it is just a servicer. A

transfer of claim form is necessary—even after claims are determined at confirmation—for the efficient implementation of the Plan. Had Nationstar submitted a transfer of claim form, it could have chosen to receive notices. It did not, so notices continued to be sent to Citimortgage.

> From the uncontested Objection, it appears that BAC Home Loan Servicing LP ("BAC") timely filed its proof of claim ("Claim No. 10-1"), asserting a junior lien against the Debtors' residence. The Debtors' confirmed plan strips off BAC's lien, as is the custom in our district in cases involving wholly-unsecured junior liens. See In re Fuller., 255 B.R. 300 (Bankr. W.D. Mich. 2000); In re Phillips, 224 B.R. 871 (Bankr. W.D. Mich. 1998). Accordingly, the plan directs the Trustee to pay BAC as an unsecured creditor.
>
> After the Trustee sent a March 2014 dividend check to BAC, BAC returned the check to the Trustee with a cover letter indicating that "[t]his loan has been service released to: Ocwen Loan Servicing, LLC . . . ." See Objection at ¶ 5 and Exh. B. It is not clear from BAC's letter, or from the Objection, whether BAC transferred its claim to Ocwen, or simply the servicing of the claim. In the Objection, and again during the telephone hearing, Debtors' counsel recited his efforts to get BAC or Ocwen Loan Servicing, LLC ("Ocwen") to amend the claim or file notice of transfer.
>
> **Third, as noted above, the nature of Ocwen's interest is not clear. Ocwen may own the claim as "transferee," or may only be the agent for purposes of servicing the loan. If Ocwen is the transferee, it must file "evidence of the transfer." Fed. R. Bankr. P. 3001(e)(2). It has not done so. And until it does, the parties should treat BAC as the holder of the claim. If, however, Ocwen is merely the servicer, it should take steps to amend the claim, as BAC's agent, to update the address for purposes of receiving payment and notices.** See Official Form B10 (Instructions) (citing Fed. R. Bankr. P. 2002(g) and stating that "[t]he creditor has a continuing obligation to keep the court informed of its current address."). It has not done this either. Because the court cannot determine the nature of BAC's or Ocwen's interest at this point, it is unwilling to disallow the claim or deem it amended, as the Debtors' proposed order suggests.
>
> Instead, as far as the claims register and the docket shows, the situation at present involves unclaimed funds, a problem trustees routinely confront with checks that are returned uncashed, usually by the U.S. Postal Service, marked as undeliverable, and without any explanation. The difference here is that BAC has provided some explanation of its reason for not cashing the check. Regardless, it plainly appears that the entity the Trustee is required to pay pursuant to the confirmed plan and proof of claim has returned the dividend check uncashed or "unclaimed," and the Bankruptcy Code and Rules provide for this situation. See 11 U.S.C. § 347(a) (unclaimed property shall be "disposed of under chapter 129 or title 28"); Fed. R. Bankr. P. 3011. Until BAC or Ocwen or someone else with a colorable right to

> amend or perfect the transfer of Claim No. 10-1 files an appropriate notice or amendment or other document with the court, the Trustee shall treat the checks he tenders to BAC (and that are returned) as unclaimed funds, segregating them and disposing of them in accordance with § 347(a). Finally, because the Debtors, the Trustee, and the holder of Claim No. 10-1 are bound by the confirmed plan and its provision for paying the claim, the court does not regard the claims allowance process as an appropriate avenue for post-confirmation relief.

*In re Sischo*, Case No. 10-08600 (Bankr. W.D. Mich. Jul. 30, 2014)(emphasis).

*Other Courts Apply Rule 3001(e)(2) Even After Final Decree Closing Case Consistent with 11 U.S.C. § 350(a) and Bankruptcy Rule 3022*

Two cases out of the Northern District of Georgia Bankruptcy Court show that claim transfers are required after a case is closed. The dockets for these two cases are included as Exhibit 200 and 201. Note that this district does not require the case to be reopened to file a claim transfer.

> For example, ABC Financial Services Co., Inc., may have acquired a portfolio of claims from XYZ Credit Company, including a claim for which XYZ Credit Company filed a proof of claim. Alternatively, ABC Financial Services Co., Inc., may have acquired all of the assets of XYZ Credit Company. In either situation, ABC Financial Services Co., Inc., is the assignee of the claim. Rule 3001(e) of the Federal Rules of Bankruptcy Procedure prescribes the procedures for an assignee of a proof of claim to establish its status as the lawful holder of the proof of claim and as the entity entitled to distributions with regard thereto. Among other things, Rule3001(e) provides the original creditor the opportunity to object to the transfer of the proof of claim. This procedure thus gives the original creditor the opportunity to show that it still owns the claim and provides protections against fraudulent or otherwise improper attempts to receive funds properly due to the original creditor."
>
> (The Court notes that it is not necessary for an assignee to seek to reopen a case for the purpose of perfecting of record an assignment of a proof of claim in connection with an application for unclaimed funds.

*In re Applications for Unclaimed Funds*, 341 B.R. 65, 72 (Bankr. N.D. Ga. 2005)(emphasis added).

> The proper way for an assignee who claims an interest in unclaimed funds payable with regard to a proof of claim filed by the assignor is to follow the procedures in Fed. R. Bankr. P. 3001(e) . . . Because the holder of the claim entitled to the unclaimed funds as a matter of record in this case is the Creditor, not the Claimant, the Court cannot authorize disbursement of the funds to the Claimant.

*In re Christopher*, Case 06-42452 p. 3 (Bankr. N.D. Ga. March 30, 2012)

The website for the Bankruptcy Court for the Eastern District of Virgina provides that claim transfers and applications for payment of unclaimed funds may be filed in closed cases without reopening the case.

> Instructions for Filing an Application for Payment of Unclaimed Funds
>
> Application Form
>
> An Application for Payment of Unclaimed Funds must be filed on Local Form 1340 edva. . . All other forms are deemed deficient. An application may be filed in a closed case without the need to file a motion to reopen the case. There is no fee associated with an Application for Payment of Unclaimed Funds.
> . . .
> Transferred or Assigned Claims and Supporting Documentation
> Where a proof of claim has been transferred or assigned, the claimant must file the necessary transfer of claim documents before filing an Application of Payment of Unclaimed Funds. Applications for Payment of Unclaimed Funds that are not filed by the Debtor in the bankruptcy case or by the party that filed the proof of claim in the case must be accompanied by copies of any assignments or other documents evidencing the right to payment

https://www.vaeb.uscourts.gov/unclaimed-funds (last visited Oct. 12, 2024).

The Bankruptcy Court for the Western District of Wisconsin do require that a closed case be reopened before filing a transfer of claim.

> Assignment/Transfer of Claim
> Last Updated: December 1, 2023
> . . .
> Filing Requirements:
> Note: A closed case must be reopened before filing an Assignment/transfer of claim.
>
> - Stipulation, signed by both assignee/transferee and assignor/transferor
>
> OR
>
> - Assignment/Transfer of Claim (The amount of the claim and name of creditor must beclearly identified on the assignment.)

https://ecf.wiwb.uscourts.gov/webhelp/Claims/Assign_Transfer_Claim.htm (last visited Oct. 12, 2024).

**L. Question 12 - That Meaningful Compliance with Bankruptcy Rule 3001(e)(2) by Nationstar Was Not Impossible Because the Case Had Been Closed**

The prior ruling states:

> [T]he Chapter 11 case had been closed consistent with 11 U.S.C. § 350(a) and Bankruptcy Rule 3022. . . . Moreover, meaningful compliance with Bankruptcy Rule 3001(e)(2) was impossible, because the case had been closed at the request of the Wigingtons.

(App. p. 486-7.) The prior court did not provide any analysis, evidence, or support for this conclusion. The prior court did not cite any part of the record or even acknowledge that it was taking judicial notice of that court's records, procedures, or filing system. Neither SPS nor Nationstar pled anything related to this finding. It is not even clear what the prior court meant. One interpretation is that the filing system would not permit filing a transfer of claim after the case was provisionally closed and marked with the close-p flag. Or maybe that the prior court would strike any transfers of claim filed in such cases. Another interpretation is that the prior court was deeming it impossible because a party would have to pay the large fee to reopen the case in order to file the transfer of claim.

*Not Impossible – Actually Totally Unrestricted*

Debtor has invested well over 100 hours researching this issue on Pacer, combing through and cataloging hundreds of individual Chapter 11 cases filed in the prior court. The search went all the way back to 2009 when the first order provisionally closing a case was issued and included all cases filed through 2022. This investigation cost Debtor well over $200 downloading or obtaining print copies from the court clerk's office at a cost of 10 cents per page.

The final results are amazing. Judicial notice is reserved for facts that are not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Debtor initially hoped to find a spattering of cases to show that it was not totally impossible. What Debtor ultimately found is that the prior court was 100% wrong. There is not

one instance of a notice type filing—one that does not require or request court action—being restricted, rejected, or stricken. There is not one instance of a notice type filing being required to reopen a case before filing or having to pay to reopen a case.

This research shows that between 2009 and 2022, there were 195 individual Chapter 11 cases filed with approximately 94 of these being confirmed. Approximately 74 (78%) of those reaching confirmation were provisionally closed. In 38 of these provisionally closed cases, there were a total of 74 notice type filings made while the case was conditionally closed. These included 23 transfers of claim, 15 creditor changes of address, 16 notices of appearance/requests for notice, 1 substitution of attorney, and 19 miscellaneous notices (default, payment change, status of claim, and claim withdrawal. The research also showed that there were five cases in which these types of filings were made in cases after the entry of a final order.

| | |
|---|---|
| List of Individual Chapter 11 Cases | Exhibit 60, App. p. 839 |
| Dockets of Cases with Filings While Provisionally Closed | Exhibit 92, App. p. 927 |
| Closing Orders (w/ summary chart) | Exhibit 93, App. p. 958 |
| Filings In Closed/Provisionally Closed Cases (w/ summary) | Exhibit 90, App. p. 1084 |
| Claims Logs | Exhibit 64, App. p. 1189 |

This research also revealed why neither Nationstar nor SPS pled that it was impossible to file a transfer of claim. They knew that it was possible—and without restriction—because Nationstar filed 11 notice filings in closed cases (including 4 transfers of claim) and SPS filed they filed 5 notice filings in closed cases (including 1 transfer of claim). Shellpoint, the servicer here, filed 1 notice filing in a closed case (it was a transfer of claim.)

This research did reveal five pleadings that were filed in provisionally closed cases (1 motion to convert, 2 relief from stay, 2 motion to enforce). Three of these filings—which require or request court involvement—were struck. However, none of the notice type filings—which only required the court clerk's involvement—were struck.

An examination of the local rules and the clerks filing guidance did not reveal any restriction at all for these notice type filings. There were no indications that a filing fee or motion to reopen required for filing these notices and the case dockets show that no such fees were every collected. In short, the court's records—to the extent of my extensive research—demonstrates that there are no restrictions of any kind for these notice type filings, including transfers of claim. The rulings conclusion was baseless.

Notice type filings occurred both before and after the change in servicer in the debtor's Chapter 11 case and have continued even after prior ruling declared that it was impossible to file such notices. The court clerk has consistently processed each of these notice type filings including substituting the transferee for the transferor in the clerk's claim log, even despite the prior ruling.

### *No Contract Defense for Impossibility Even if Reopening Fee Required*

Additionally, even if the Eastern District Bankruptcy Court required a creditor to file a motion to reopen and pay the reopen fee before filing a transfer of claim, it would not excuse compliance with the Plans requirement to file a transfer of claim or with Rule 3001(e)(2) under an impossibility defense.

The impossibility defense in Texas is based on Section 261 of the Restatement (Second) of Contracts, which provides that "[w]here, after a contract is made a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 339–40 (Tex. App.—Eastland 2009, no pet.) (quoting Restatement (Second) of Contracts § 261 (1981)). The supervening impossibility defense generally applies in three types of instances: (1) death or incapacity of a person necessary for performance,

(2) destruction or deterioration of a thing necessary for performance, and (3) prevention by governmental regulation. *Key Energy Servs., Inc.*, 290 S.W.3d at 340. A mere showing that performance has become economically burdensome is not sufficient. See *Huffines v. Swor Sand & Gravel Co., Inc.*, 750 S.W.2d 38, 40 (Tex. App.—Fort Worth 1988, no writ); see also *Philips v. McNease*, 467 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

The confirmed Chapter 11 Plan anticipates and authorizes debtor to close the case prior to completion of plan payments. Section 8.01 states "After the case is fully administered to the Debtors' satisfaction, the Debtors shall petition the Court for a Conditional Closure of the case. Upon Order of the Court conditionally closing the case, the U.S. Trustee quarterly fees shall not continue to accrue or be incurred by the Debtors during the time that the case is conditionally closed." (Chapter 11 Plan, App. p. 185). Thus, there was no "occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." The fact that Debtor might closed the case prior to completion of plan payments was known at the inception of the contract.

The prior court also pointed out that the provisional closure was at the request of Debtor, but 78% of those cases reaching confirmation were later provisionally closed. This was standard procedure in the Eastern District.

**M. Question 13 - That In Order to Change the Payee and/or Payment Address for the Mortgage Claim Either (1) Nationstar had to File a Transfer of Claim or (2) Citimortgage was Required to Amend the Proof of Claim by Section 10.07 of the Chapter 11 Plan.**

Section 10.07 (Provisions Governing Distributions) states "Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed)." (App. p. 187.)

This section provides an independent requirement, above and apart from Rule 3001(e)(2) for filing an amended proof of claim or transfer of claim. This independent requirement had no reference or connection to whether the case was open, closed, or provisionally closed. It demonstrated Debtor's intent to relieve on the addresses on the proof of claim. While this section does only specifically relate to payment addresses, the form to change these addresses also provide for the address for notifications.

## V. Judicial Notice

Debtor requests the Court take judicial of all public and court records included in the exhibits attached to this motion.

## PRAYER

WHEREFORE, Debtor prays that the Court grant Debtor's Second Motion for Summary Judgment and

1) Disallow U.S. Banks' claim because it is unenforceable against the Debtor and property of the Debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured,

2) Find that there was no amount of the mortgage debt under Citimortgage's proof of claim that was not required to be paid under Debtor's Chapter 11 Plan,

3) Find that U.S. Bank is precluded from bring a claim on any debt included in Debtor's Chapter 11 Plan by Res Judicata (Claim Preclusion),

4) Find that U.S. Bank is precluded from relitigating whether Debtor Made all mortgage payments required of him under the plan by collateral estoppel,

5) Find that U.S. Bank is precluded from raising the issue of constitutional notice since it did not plead a Rule 60(b)(4) affirmative defense in an amended response to Debtor's objection to claim or in a response to this motion,

6) Find that U.S. Bank is precluded by res judicata because Nationstar could and should have raised any lack of notice issue in the prior case or appealed that case,

7) Find that Debtor is entitled to a dismissal of U.S. Bank's Rule 60(b)(4) affirmative defense because U.S. Bank cannot make a showing sufficient to establish that Nationstar did not have constitutional notice,

8) Find that Nationstar did have actual notice of the pendency of the action in time to afford them an opportunity to present their objections,

9) Find that Nationstar did have notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections because the means employed by debtor to provide notice to Nationstar was such as one desirous of actually informing the absentee might reasonably adopt to accomplish it,

10) Find that Nationstar's constitutional notice rights were satisfied because of its relationship to Freddie Mac and Citimortgage because of the notice given to Citimortgage,

11) Find that Bankruptcy Rule 3001(e)(2) was applicable at the time of the transfer of servicing,

12) Find that Nationstar's meaningful compliance with Rule 3001(e)(2) was not impossible,

13) Find that the Plan Required That In Order to Change the Payee and/or Payment Address for the Mortgage Claim Either (1) Nationstar had to File a Transfer of Claim or (2) Citimortgage was Required to Amend the Proof of Claim by Section 10.07 of the Chapter 11 Plan,

14) Order U.S. Bank to return all funds paid to it by the Trustee with regard to its proof of claim, and

15) Grant general relief and all other relief as may be just and proper in the premises.

Respectfully submitted,

Dated: October 15, 2024

/s/ George Dale Wigington_
George Dale Wigington
Pro Se
State Bar No.: 24091665
Dalewig10@verizon.net
2451 Elm Grove Road
Wylie, TX 75098
469-235-1482

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the parties below on October 15, 2024 by mailing a copy of same to them via first-class mail or through the court's CM/ECF electronic mail (Email) system.

/s/ George Dale Wigington
George Dale Wigington

Tricia Ann Morra
Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee for VRMTG Asset Trust
tmorra@raslg.com