## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No: 22-31780-swe13** |
| **GEORGE DALE WIGINGTON** | § | **Chapter No: 13** |
| | § | |
| **Debtor** | § | |

## DEBTOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

NOW COMES GEORGE DALE WIGINGTON ("**Debtor**") to file this Proposed Findings of Fact and Conclusions of Law in support for Debtor's Objection to Claim.

### 1. STIPULATED FINDINGS OF FACT

1. On December 29, 2004, George Dale Wigington and Teresa Lynn Wigington executed a Promissory Note (the "Note") and Deed of Trust (the "Deed of Trust") securing payment of the Note in the amount of $216,000.00, at 5.00% interest, with a maturity date of January 1, 2025.

2. This property is located at 2451 Elm Grove Road, Wylie, Texas 75098 and has been Debtor's primary residence since 2004.

3. ABN AMRO Mortgage Group, Inc. was the original lender and beneficiary of the Deed of Trust. The Deed of Trust was recorded on January 3, 2005, at instrument Number 3190984, in the Public Records of Dallas County, Texas.

4. The Assignment of Deed of Trust from CitiMortgage, Inc. Successor by Merger to ABN AMRO Mortgage Group, Inc. to Nationstar Mortgage LLC was signed on August 25, 2016. This Assignment of Deed of Trust was recorded on August 26, 2016, at instrument number 201600237249, in the Public Records of Dallas County, Texas.

5.  The Assignment of Deed of Trust from Nationstar Mortgage LLC to Select Portfolio Servicing, Inc. was signed on November 5, 2019.  This Assignment of Deed of Trust was recorded on November 6, 2019, at instrument number 201900298645, in the Public Records of Dallas County, Texas.

6.  The Assignment of Deed of Trust from Select Portfolio Servicing, Inc. to US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust was signed on March 22, 2022.  This Assignment of Deed of Trust was recorded on April 5, 2022, at instrument number 202200093811, in the Public Records of Dallas County, Texas.

7.  US Bank Trust National Association, not in its Individual Capacity but Solely as Owner Trustee for VRMTG Asset Trust ("US Bank") is the current assignee of the deed of trust.

8.  Debtor received a Notice of Service Transfer that stated that NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint") is the current servicer.

9.  The secured creditor and servicer have changed throughout the loan term.

10. Since 2011, Debtor has filed two bankruptcies and an adversary proceeding in the Bankruptcy Court for the Eastern District of Texas; these cases are outlined below.

    a.  George D Wigington and Teresa L Wigington, Chapter 13 converted to Chapter 11, Eastern District of Texas, Sherman Division, Bankruptcy Case 11-41092.  Debtors were represented by counsel.

    b.  George Dale Wigington, Chapter 13, Eastern District of Texas, Sherman Division, Bankruptcy Case 18-42230.  Debtor represented himself.

    c. George Dale Wigington v. Nationstar Mortgage LLC D/B/A Mr. Cooper, Eastern District of Texas, Sherman Division, Adversary Proceeding 19-04074. Debtor represented himself.

11. The Bankruptcy Court for the Eastern District of Texas was a court of competent jurisdiction for each of the three above cases.

12. Debtor has filed one bankruptcy case in the Bankruptcy Court for the Northern District of Texas, the bankruptcy case here as outlined below.

    a. George Dale Wigington dba Law Office of G.D. Wigington PLLC, Chapter 13, Northern District of Texas, Dallas Division, Bankruptcy Case 22-31780-swe13. Debtor is representing himself.

13. For each of these four cases described above:

    a. The parties were identical or in privity,

    b. The Mortgage Debt formed the basis of the proof of claim at issue in each case.

14. CitiMortgage filed the proof of claim in Case 11-41092 based on the Note and the Deed of Trust (collectively the "Mortgage Debt") on November 30, 2011.

15. CitiMortgage listed the "Name of Creditor" in its proof of claim as "CITIMORTGAGE, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST."

16. CitiMortgage listed "CitiMortgage, INC." as the recipient for both payments and notices its proof of claim.

17. On August 18, 2011, Barrett Daffin Frappier Turner & Engel, LLP. filed a notice of appearance in the case as counsel for "CITIMORTGAGE, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST" that states "Creditor is the Servicer, the holder of the Note and the mortgagee of record, holding a first security interest in certain real property and is

authorized to file this Notice of Appearance on behalf of the Investor* pursuant to the Freddie Mac Single- Family Seller/Servicer Guide, the servicing agreement between Servicer and Freddie Mac, which is published on AllRegs at http://www.freddiemac.com/sell/guide/#."

18. CitiMortgage's claim was provided for in Debtors' confirmed Chapter 11 Plan.

19. On November 3, 2014, Debtors' Chapter 11 was provisionally closed.

20. While Debtors' Chapter 11 case was provisionally closed, on August 25, 2016, the Deed of Trust was assigned to Nationstar Mortgage LLC by "CITIMORTGAGE INC. SUCCESSOR BY MERGER TO ABN AMRO MORTGAGE GROUP, INC."

21. Debtor received a notice of servicing transfer dated August 29, 2016 from Nationstar which stated the effective date of the transfer was August 16, 2016.

22. At the time the notice of servicing transfer was sent, Debtors' Chapter 11 was provisionally closed. Neither Nationstar nor CitiMortgage updated the notice or payment address in the Proof of Claim and neither filed a notice of claim transfer relative to the Mortgage Debt.

23. Debtors continued to send payments to CitiMortgage.

24. After the effective date shown in the notice of servicing transfer, Debtors continued to send mortgage payments, in the same manner (EFT), to the same recipient, CitiMortgage, as they had for more than four years before the notice of servicing transfer.

25. Debtors made a series of four post-assignment EFT payments to CitiMortgage in August 2016, September 2016, October 2016, and December 2016. Each of these payments were apparently forwarded to Nationstar and were applied to the Mortgage Debt.

26. Debtors made a post-assignment EFT payment to CitiMortgage on or about December 30, 2016.  CitiMortgage did not forward the funds to Nationstar, instead it mailed a check to Debtor for the same amount on or about January 19, 2017.

27. Debtors made another post-assignment EFT payment to CitiMortgage on or about March 3, 2017.  CitiMortgage did not forward the funds to Nationstar, instead it mailed a check to Debtor for the same amount on or about March 21, 2017.

28. Between on or about April 6, 2017 and on or about October 20, 2017 Debtor mailed to CitiMortgage, a total of seventeen checks and all were returned to Debtors.

29. On November 1, 2017, Debtors filed the Motion to Reopen and Notices of Plan Completion and §522(q) Statement by Individual Debtor in a Chapter 11 Case.

30. The Motion to Re-open and Notice of Plan Completion started the discharge process and triggered the Notice of Intent to Issue Order of Discharge.

31. George Dale Wigington executed a Notice of Plan Completion.

32. Teresa Lynn Wigington executed a Notice of Plan Completion.

33. The introduction paragraph of the Notice of Plan Completion states "I _GEORGE D WIGINGTON__, as a debtor in the above referenced Chapter 11 case, declare under penalty of perjury that:…".  The Notice of Plan Completion was executed by George D Wigington on November 01, 2017 and filed on the docket on November 01, 2017.

34. The introduction paragraph of the Notice of Plan Completion states "I _TERESA L WIGINGTON__, as a debtor in the above referenced Chapter 11 case, declare under penalty of perjury that:…"  The Notice of Plan Completion was executed by Teresa L Wigington on November 01, 2017 and filed on the docket on November 01, 2017.

35. The pertinent paragraph marked on both Debtors' Notice of Plan Completion states "I [ X ] have [  ] have not: tendered all payments to creditors required to be tendered by me under the provisions of the confirmed Chapter 11 plan in this case;".

36. Debtors did not update the creditor matrix in their Chapter 11.

37. During Debtors' Chapter 11, Debtor George Dale Wigington went to law school for the cost of textbooks because the Texas Hazlewood Act provided him a full tuition and fee exemption; he passed the bar exam in July 2017 and graduated from law school in December 2017. Debtor became licensed to practice law on January 25, 2018 and was sworn in on February 1, 2018.

38. In October 2018, Nationstar scheduled a foreclosure sale of Debtor's primary residence.

39. On October 2, 2018, Debtor, representing himself, filed his 2018 Chapter 13 case, Bankruptcy Case 18-42230.

40. Debtor's 2018 Chapter 13 plan was confirmed and included payment towards the mortgage claim.

41. During the 2018 Chapter 13, Debtor paid $12,837.70 to the holder of the mortgage claim.

42. On August 23, 2019, Debtor filed an adversary complaint titled Objection to Proof of Claim 4-1 of Nationstar Mortgage LLC d/b/a Mr. Cooper; Action to Determine the Validity, Priority, and Extent of Lien, and Complaint against Nationstar, Adversary Case 19-04074.

43. Litigation in this adversary and appeal lasted longer than three years.  In May 2021, the adversary was dismissed because Debtor's underlying 2018 Chapter 13 was dismissed, and in July 2022, the District Court's Order Affirming the Bankruptcy Court's Dismissal was entered.

44. In April 2021, the 2018 Chapter 13 bankruptcy was dismissed.

45. Debtor received Notice that on January 10, 2022, NewRez LLC dba Shellpoint Mortgage Servicing started servicing the mortgage on behalf of US Bank.

46. On March 22, 2022, Select Portfolio Servicing, Inc. assigned the deed of trust to US Bank.

47. On September 28, 2022, Debtor, representing himself, filed the current Chapter 13.

48. On December 1, 2022, US Bank filed its Proof of Claim, claim #5, as a total debt claim in the amount of $156,343.11; as of September 28, 2022, the principal balance is $108,386.60, interest is $20,108.18, fees and costs total $5,920.56, and escrow deficiency for funds advanced total $22,338.64.

49. Debtor's confirmed Chapter 13 Plan provides for US Bank's claim in full as a total debt claim in an amount to be determined in this claim objection trial.

50. On June 20, 2023, Debtor filed an Objection to US Bank's claim, docket 70.

51. On August 30, 2023, US Bank filed its response to Debtor's Objection to Claim, docket 76, and supporting docs at docket 77.

52. In response to Debtor's discovery requests asking for a list of all expenses and costs charged to the mortgage account, along with invoices for all expenses and costs, US Bank provided a list of expenses and costs that totaled $5,920.56 and copies of invoices that totaled $2,196.82.   US Bank did not provide a list or copies of invoices for escrow deficiency for funds advanced.

53. US Bank's proof of claim filed in this case does not include "Part 5: Loan Payment History from First Date of Default" or any transactional history.

54. On June 7, 2024, in response to questions concerning the accuracy with which the note attached to the Proof of Claim represented the actual note, US Bank agreed to provide

Debtor with a certified copy of the Note. Debtor has followed up asking for this document

and US Bank has not provided the promised certified copy of the Note.

55. In discovery, US Bank and/or Shellpoint admitted that Debtor's personal liability had been

discharged by the order of discharge in Case 11-41092.

## 2.   PROPOSED FINDINGS OF FACT

56. In its proof of claim, CitiMortgage claimed a total debt of $159, 937.34. Included in this

amount was $0.00 in interest, $100.00 in post-petition bankruptcy fees, and $965.31 in

escrow shortage.

57. No objection to CitiMortgage's proof of claim was filed and the claim was deemed allowed

when the time permitted for a claim objection in the Plan expired.

58. The escrow shortage reflected a deficiency in the cushion required to be maintained and

did not reflect any escrow costs paid by CitiMortgage.

59. Debtor made at least sixty-eight post-petition payments to CitiMortgage on the mortgage

debt between April 5, 2011 and August 2, 2016:

| NUMBER | DATE | AMOUNT |
|---|---|---|
| Payment 1 | 4/5/2011 | $ 2,057.13 |
| Payment 2 | 5/3/2011 | $ 2,057.13 |
| Payment 3 | 5/31/2011 | $ 2,057.13 |
| Payment 4 | 7/11/2011 | $ 2,033.34 |
| Payment 5 | 8/10/2011 | $ 2,033.34 |
| Payment 6 | 9/6/2011 | $ 2,033.34 |
| Payment 7 | 10/3/2011 | $ 2,033.34 |
| Payment 8 | 11/14/2011 | $ 2,033.34 |
| Payment 9 | 11/29/2011 | $ 2,033.34 |
| Payment 10 | 12/27/2011 | $ 2,033.34 |
| Payment 11 | 1/23/2012 | $ 2,033.34 |
| Payment 12 | 2/29/2012 | $ 2,019.92 |
| Payment 13 | 3/28/2012 | $ 2,019.92 |
| Payment 14 | 5/3/2012 | $ 2,019.32 |
| Payment 15 | 5/30/2012 | $ 2,019.92 |
| Payment 16 | 6/26/2012 | $ 2,019.92 |

| | | |
|---|---|---|
| Payment 17 | 8/8/2012 | $ 2,019.92 |
| Payment 18 | 9/5/2012 | $ 2,019.92 |
| Payment 19 | 10/3/2012 | $ 2,019.92 |
| Payment 20 | 10/30/2012 | $ 2,019.92 |
| Payment 21 | 12/4/2012 | $ 2,019.92 |
| Payment 22 | 12/26/2012 | $ 2,019.92 |
| Payment 23 | 1/29/2013 | $ 2,019.92 |
| Payment 24 | 2/27/2013 | $ 2,019.92 |
| Payment 25 | 2/28/2013 | $ 434.04 |
| Payment 26 | 4/2/2013 | $ 2,453.96 |
| Payment 27 | 4/30/2013 | $ 2,453.96 |
| Payment 28 | 5/21/2013 | $ 2,127.24 |
| Payment 29 | 6/25/2013 | $ 2,453.96 |
| Payment 30 | 7/26/2013 | $ 2,127.24 |
| Payment 31 | 8/27/2013 | $ 2,127.04 |
| Payment 32 | 10/3/2013 | $ 2,127.04 |
| Payment 33 | 10/30/2013 | $ 2,106.26 |
| Payment 34 | 12/3/2013 | $ 2,106.26 |
| Payment 35 | 1/7/2014 | $ 2,106.26 |
| Payment 36 | 1/7/2014 | $ 2 7.10 |
| Payment 37 | 2/5/2014 | $ 2,374.26 |
| Payment 38 | 3/5/2014 | $ 2,106.26 |
| Payment 39 | 3/31/2014 | $ 2,106.26 |
| Payment 40 | 5/1/2014 | $ 2,153.54 |
| Payment 41 | 5/28/2014 | $ 2,153.54 |
| Payment 42 | 6/24/2014 | $ 2,153.54 |
| Payment 43 | 8/5/2014 | $ 2,153.54 |
| Payment 44 | 9/3/2014 | $ 2,153.54 |
| Payment 45 | 9/30/2014 | $ 2,153.54 |
| Payment 46 | 10/30/2014 | $ 2,153.54 |
| Payment 47 | 12/2/2014 | $ 2,153.54 |
| Payment 48 | 1/5/2015 | $ 2,153.54 |
| Payment 49 | 2/3/2015 | $ 2,153.54 |
| Payment 50 | 3/3/2015 | $ 2,153.54 |
| Payment 51 | 4/6/2015 | $ 2,153.54 |
| Payment 52 | 5/5/2015 | $ 2,207.33 |
| Payment 53 | 6/9/2015 | $ 2,207.33 |
| Payment 54 | 7/6/2015 | $ 2,207.33 |
| Payment 55 | 8/4/2015 | $ 2,207.33 |
| Payment 56 | 8/31/2015 | $ 2,207.33 |
| Payment 57 | 9/29/2015 | $ 2,207.33 |
| Payment 58 | 10/27/2015 | $ 2,207.33 |
| Payment 59 | 12/8/2015 | $ 2,207.33 |
| Payment 60 | 1/5/2016 | $ 2,207.33 |
| Payment 61 | 2/2/2016 | $ 2,207.33 |
| Payment 62 | 3/1/2016 | $ 2,207.33 |

| | | |
|---|---|---|
| Payment 63 | 3/28/2016 | $ 2,207.33 |
| Payment 64 | 4/26/2016 | $ 2,207.33 |
| Payment 65 | 5/24/2016 | $ 2,207.33 |
| Payment 66 | 5/31/2016 | $ 24.11 |
| Payment 67 | 7/6/2016 | $ 2,231.44 |
| Payment 68 | 8/2/2016 | $ 2,231.44 |

60. Each of these sixty-eight payments were sent prior to Debtor's receipt of the Notice of Servicing Transfer.

61. The notice of servicing transfer contained many statements negating any expectation that Debtor should sent payments to Nationstar as a result of receiving the notice. And Debtor never believed it did anything other than inform him that a transfer had occurred. The notice stated "Our records indicate the loan is currently in an Active Bankruptcy Status." The notice includes bankruptcy disclaimers on each of the first two pages that state "This communication is for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code." On the first page, Debtor was directed to contact "Nationstar Mortgage Bankruptcy" with questions. On the second page, Debtor was directed to contact Nationstar Mortgage LLC Attn: Bankruptcy Department" with questions and "Any time you have questions regarding the account, do not hesitate to contact our Bankruptcy Department at (877) 343-5602 The notice also referenced "voluntary" payments stating "You can count on Nationstar Mortgage to meet your needs whether you're looking to make a voluntary payment or have questions regarding the account. We offer various voluntary payment options, and a toll free line (877) 343-5602 with automated account information."

62. Shortly after receiving the Notice of Servicing Transfer, Debtor tried to create an online account but was not able to create an account; the reason was not apparent from the website.

63. Nationstar sent Debtor correspondence dated August 31, 2016 which stated "Nationstar

Mortgage LLC recently acquired your mortgage. Our records indicate you recently filed

64. bankruptcy. This letter is for informational purposes only and provides important

information for you while your loan is being serviced by the Bankruptcy Department at

Nationstar Mortgage. . . Payments during the pendency of the bankruptcy case can be

mailed, sent via Western Union or Money Gram. . . Sincerely, Bankruptcy Department."

Debtor's bankruptcy attorney was copied on the letter, "CC: GREGORY W MITCHELL[,]

8140 WALNUT HILL LN STE 301[,] DALLAS TX 75231-4328." This correspondence

also contained a bankruptcy disclaimer which stated "This letter is sent for informational

purposes only and is not intended as an attempt to collect, assess, or recover a claim against,

or demand payment from, any individual protected by the United States Bankruptcy Code.

If this account is active or has been discharged in a bankruptcy proceeding, be advised this

communication is for informational purposes only and not an attempt to collect a debt.

Please note, however Nationstar reserves the right to exercise the legal rights only against

the property securing the original obligation." Finally, the subject line of this

correspondence identified Debtor's bankruptcy case by number, "Account #:

0631326303[,] Case Number: 1141092."

65. On September 1 and 2, 2016 Debtor called Nationstar four times, spending more than forty

minutes on the phone. Debtor was finally able to speak to a person on the fourth attempt

and reported his inability to create an account. The representative told Debtor that accounts

in bankruptcy are not permitted online access.

66. There had been at least five notices of transfer of claims filed in the case prior to August 2016 and Debtor had followed the processing of the transfer of claims and was knowledgeable of the procedure.

67. Debtor made plan payments to the transferee until the transferor was substituted for the original creditor on the claims log. After the substitutions, Debtor paid the transferee.

68. Based on (1) Debtor's belief that the case was active, (2) Nationstar's repeated, affirmative acknowledgement that the case was active, (3) inclusion of multiple bankruptcy disclaimers, description of payments as voluntary, and "for information only" statements, and (4) Debtor's familiarity with the system for transferring claims he continued to send payments to the transferor expecting that Nationstar would be filing a transfer of claim.

69. Debtor made four payments after the effective date shown in the notice to CitiMortgage on the mortgage debt between August 28, 2016 and December 6, 2016.  Each of these payments were accepted and applied to Debtor's mortgage.

| NUMBER | DATE | AMOUNT |
| --- | --- | --- |
| Payment 69 | 8/28/2016 | $ 2,231.44 |
| Payment 70 | 9/29/2016 | $ 2,231.44 |
| Payment 71 | 10/25/2016 | $ 2,231.44 |
| Payment 72 | 12/6/2016 | $ 2,231.44 |

70. On December 6, 2016, Debtor downloaded a docket for Case 11-41092. This docket shows that the status of the case is "CLOSE-P." The last docket entry is 11/05/2014 DOC 426 Certificate of Mailing and the case is not identified as closed in the docket entries. Debtor's attorney, Gregory W. Mitchell had previously relocated officers and this docket reflects that he filed his new address in the court's records on December 6, 2016.

71. Debtor made a payment on January 4, 2016 to CitiMortgage on the mortgage debt. This EFT payment was accepted but never applied to Debtor's mortgage.

| NUMBER | DATE | AMOUNT |
|---|---|---|
| Payment 73 | 1/4/2017 | $ 2,231.44 |

72. CitiMortgage mailed Debtor a letter and a check in the amount of the previous payment, $2,231.44 on or about January 19, 2017. The letter stated "We are unable to process the remittance(s) as CitiMortgage no longer services this loan. Please send the enclosed remittance(s) and all future payments to your new servicer at the following address."

73. Debtor checked the claims register for the case and found that CitiMortgage was still listed as payee. Debtor would have sent payments to anyone CitiMortgage desired if CitiMortgage simply revised the payee and payment information for the claim. Otherwise, Debtor did not consider the request to be valid.

74. Debtor was in law school and spent what turned out to be weeks researching this and found case after case holding that transferor was proper payee until a transfer of claim was filed. None of these cases involved a Chapter 11 and none involved a provisionally closed case.

75. On February 4, 2017 Nationstar mailed Debtor's attorney a letter ("First Mod Letter") which referred to "Case Number: 1141092" in the subject line. The letter was addressed to "GREGORY W MITCHELL[,] 8140 WALNUT HILL LN STE 301[,] DALLAS TX 752314328". The letter states "Our records indicate that you represent George Wigington and Teresa Wigington in the above Bankruptcy proceedings. . . . Our records indicate that your client is currently in an active Bankruptcy proceeding. The letter contained a bankruptcy disclaimer that states "Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U. S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt

against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this correspondence shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability."

76. The First Mod Letter was mailed to Debtor's attorney at an outdated address. Debtor only learned of the letter later by researching his online account.

77. On February 24, 2017, Nationstar issued Debtor a mortgage statement for the first time since they become associated with his mortgage, this statement—and all nine subsequent mortgage statements issued to Debtor prior to his discharge—contained three bankruptcy disclaimers.

> NATIONSTAR IS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY TO THE EXTENT THAT IT IS INCLUDED IN YOUR BANKRUPTCY OR HAS BEEN DISCHARGED, BUT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

> Page If this account Is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise the legal rights only against the property securing the original obligation.

> Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

78. On March 1 or March 2, 2016, Nationstar mailed Debtor a Notice of Default dated "2/28/2017" which stated "You have the right to cure the default by paying the total amount due listed above, within 30 days from the date of this letter which is 03/30/2017 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter)."

79. The Notice of Default was not placed in the U.S. Mail until March 1 or March 2, 2017. Since the cure period does not start until the notice is placed in the mail, Nationstar provided only a 28 or 29 day cure period. Nationstar's foreclosure rights under the deed of trust are only available after a valid acceleration of the debt which requires a 30 day notice to cure.

80. After some weeks research transfers of claims, Debtor ran across a case in which the court admonished a Debtor in a similar situation because the Debtor was paying neither the transferee nor the transferor. Debtor realized that he would be in default under the Plan if he did not make the mortgage payment. Based on his research, and the lack of a claim transfer, Debtor decided to pay CitiMortgage despite the letter.

81. Debtor made a payment on March 7, 2017 to CitiMortgage on the mortgage debt. This EFT payment was accepted but never applied to Debtor's mortgage.

| NUMBER | DATE | AMOUNT |
|---|---|---|
| Payment 74 | 3/7/2017 | $ 4,462.88 |

82. CitiMortgage mailed Debtor a letter and a check in the amount of the previous payment, $4,462.88 on or about March 21, 2017.  The letter stated "We are unable to process the remittance(s) as CitiMortgage no longer services this loan. Please send the enclosed remittance(s) and all future payments to your new servicer at the following address."

83. Somewhere around March 21, 2017, Nationstar mailed Debtor's attorney a second Mod
    Letter ("Second Mod Letter"). The electronic version of this letter was identical to the one
    sent February 4, 2017 (or February 10, 2017 as shown in some places) down to the February
    4, 2017 date. Debtor does not know whether this document in March contained a March
    date or a February date. The letter was addressed to "GREGORY W MITCHELL[,] 8140
    WALNUT HILL LN STE 301[,] DALLAS TX 752314328". The letter states "Our records
    indicate that you represent George Wigington and Teresa Wigington in the above
    Bankruptcy proceedings. . . . Our records indicate that your client is currently in an active
    Bankruptcy proceeding. The letter contained a bankruptcy disclaimer that states "Please be
    advised this communication is sent for informational purposes only and is not intended as
    an attempt to collect, assess, or recover a claim against, or demand payment from, any
    individual protected by the U. S. Bankruptcy Code. If this account has been discharged in
    a bankruptcy proceeding, be advised this communication is for informational purposes only
    and not an attempt to collect a debt against you; however, the servicer/lender reserves the
    right to exercise the legal rights only against the property securing the loan obligation,
    including the right to foreclose its lien under appropriate circumstances. Nothing in this
    correspondence shall be construed as an attempt to collect against the borrower personally
    or an attempt to revive personal liability."

84. The Second Mod Letter was again mailed to Debtor's attorney at an outdated address.
    Debtor only learned of the letter later by researching his online account.

85. Debtor called Nationstar on March 23, 2019 after he received this second letter from
    CitiMortgage. He spoke with a Nationstar representative regarding Nationstar's failure to
    file a notice of transfer of claim. Plaintiff told Nationstar that until and unless such notice

was filed, he would continue to send payments to Citimortgage as required by the Chapter 11 Plan. The representative told Debtor that he would need to have his attorney call their bankruptcy department if he had concerns over the identity of the proper payee and payment address for his mortgage payments.

86. Debtor did not request his attorney contact Nationstar's bankruptcy department. The Bankruptcy Code does not require Debtor to pay his attorney to teach Nationstar how to comply with the requirements to transfer a claim. Debtor gave notice to Nationstar that he did not intend to honor the notice of servicing transfer until Nationstar complied with bankruptcy code and supplied the proof of transfer sufficient to satisfy the requirements.

87. Nationstar mailed Plaintiff correspondence dated April 14, 2107 regarding a supplemental income disclosure. This document, that identified the address for Debtor's residence in Texas, yet stated that it was located in New York, states:

> RE: Loan Number: 631326303
> Property Address: 2451 ELM GROVE RD WYLIE, TX 75098
> . . .
> Since your property is located in the State of New York, we are required to provide . . .

88. Debtor made a series of payment between April 6, 2017 and June 10, 2017 to CitiMortgage on the mortgage debt. After reviewing Section 10.07 governing payment addresses—and given that CitiMortgage had revoked its implied consent to receiving EFT Payments returning payments—Debtor started mailing checks to the address on the proof of claim. Debtor also hoped this might place the payments in front of a fresh set of eyes who might realize that a transfer of claim needed to be filed. These check payments were refused and returned to Debtor by mail.

| NUMBER | DATE | AMOUNT |
| --- | --- | --- |

| | | |
|---|---|---|
| Payment 75 | 4/6/2017 | $ 4,462.88 |
| Payment 76 | 4/26/2017 | $ 6,694.32 |
| Payment 77 | 5/30/2017 | $ 6,694.32 |
| Payment 78 | 6/10/2017 | $ 15,000.00 |

89. On June 12, 2017, Nationstar's attorney mailed Debtor a Notice of Sale that states "You are informed that the public auction of the property described in the notice is scheduled for Tuesday, July 4, 2017, between the hours of 10:00 A.M. and 4:00 P.M. at the Collin County Courthouse." The notice included a bankruptcy disclaimer, "If you have been discharged from a bankruptcy involving the subject property or subject to an automatic stay in a bankruptcy proceeding, then any demand for payment or reference to personal liability does not apply to you and is for informational purposes only."

90. The subject line states that the Note was still payable to ABN AMRO Mortgage Group, Inc., stating:

> Re: Notice of foreclosure sale on Tuesday, July 4, 2017, by Mitch Jordan, . . ., David Garvin, . . . or Kelly Goddard Substitute Trustee of property described in Deed of Trust dated December 29, 2004, executed by George Dale Wigington and Teresa Lynn Wigington, husband and wife and recorded in/under Document No 3190984, Book 2005001, Page 08527, Official Public Records, Collin County, Texas, and securing the obligations therein described (the Obligations) payable to Abn Amro Mortgage Group, Inc ..

91. The postmark on the notice of foreclosure was dated June 9, 2017, three days before the date on the letter. The notice stated that the Debtor's Dallas County residence would be sold in Collin County.

92. Debtor actually felt relieved when he received the notice of sale, believing that it would mean an attorney would review the account and finally get Nationstar to file a transfer of claim. This relief was short-lived as no help was coming.

93. Debtor mailed a payment by check June 26, 2017 to CitiMortgage on the mortgage debt.

This check payment was refused and returned to Debtor by mail.

| NUMBER | DATE | AMOUNT |
|---|---|---|
| Payment 79 | 6/26/2017 | $ 4,462.88 |

94. On June 17, 2019, Debtor filed suit in Dallas County District Court seeking an injunction.

95. Section 10.09 of the Chapter 11 Plan permitted creditors to foreclose on property if Debtor

was in default under the Plan. Section 10.09 states "If Debtor fails to satisfy any of the

obligations under this Plan and such default is not cured within 30 business days of the date

of transmission of notice of the default to Debtor, then the defaulted party may pursue all

of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure

on its lien(s) on property.

96. On June 27, 2017, Nationstar representative Amy Parker told Debtor via phone that it was

a Freddie Mac loan, that Citimortgage was the holder of the note, and that Nationstar was

servicing the note for Citimortgage.

97. On June 27, 2017, Debtor called Nationstar foreclosure attorney Jeff Lewis and asked for

a copy of the assignment of the deed of trust. Lewis paused for a long while as he scrolled

through his file and finally stated that he did not have a copy of the assignment of the deed

of trust in his file. This was more than two weeks after he mailed and posted the first notice

of foreclosure.

98. On June 27, Debtor emailed Nationstar foreclosure attorney Jeff Lewis and stated "I also

wanted to point out to you the discrepancy in who is the 'mortgagee of record' and the lack

of any assignment of the deed of trust in the property records. Freddie Macs website says

that they own the loan. Nationstar says that Citimortgage owns the loan. Your notice

represents that Nationstar holds the note. Please clarify these so that I can verify whether Section 51.0025 has been satisfied."

99. On June 29, 2017, Debtor called Lewis and left a voice mail requesting a copy of the appointment of the substitute trustee.

100.    The posted first notice of sale contained a statement that states "THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT INDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER." The notice was signed by David Garvin who was appointing himself substitute trustee. David Garvin was not an attorney or authorized agent of Nationstar at the time he signed the posted notice of sale.

101.    On June 30, Debtor uploaded the state court petition to Nationstar via his online account. On July 5, 2017 Nationstar acknowledged the notice.

102.    An appointment of substitute trustee was filed in the property records on July 12, 2017 which appointed David Garvin substitute trustee. This document was signed by Lewis.

103.    On or about July 10, 2017, Nationstar's attorney mailed Debtor a second Notice of Sale setting a foreclosure date of August 1, 2017. The notice was postmarked July 6, 2017, four days before the date of the letter.

104.    On July 19, Debtor emailed Lewis stating "In addition to the foreclosure defects that I claimed in the lawsuit I filed, your notice of foreclosure that you sent to me and my wife were not sent by certified mail. The letters do contain something that appears to be a

certified mail tracking number, (and a large amount of postage), however, they were never

presented to the USPS as certified mail. The USPS shows nothing for the tracking numbers

- no presentment, no notice, no intermediate scans, no delivery scans. These letters were

delivered after July 11, the deadline, to our mailbox. We were not asked to sign for them."

Lewis replied "I have reviewed the matters raised in your e-mails in regard to the Notice

of Sale. Additionally, I have talked to the USPS. According to the USPS the Certified

Letter was delivered as if it were First Class mail, meaning the bar code was not read by

the USPS scanners. However, we know that the letter was

deposited in with the USPS (which is the requirement of the property code because it was,

in fact, delivered. There are a number of Texas cases which have held that receipt of actual

notice (as opposed to the constructive notice provided for in the property code) will support

a foreclosure sale."

105.   Debtor's email continued, stating "P.S. This is a really bad time for you and Nationstar

to be pulling this. I am trying to study for the bar exam next week and have to deal with

this stuff. My wife is so distraught that she missed work on Monday. I beg you to review

Nationstar's records. We are current on our obligation for our house. You have already

posted in the wrong county. You are trying to rush through foreclosure and have not sent

the proper notices. I know that, as an attorney, you reviewed my file before trying to

foreclose. I ask that you review it again, you missed a lot the first time or Nationstar is

withholding it from you. I am not raising a crazy split-the-note or MERS defense. I am

current and you have not complied with the deed of trust and statutes in attempting to

foreclose. Those are my defenses. I wonder how many other notices, besides mine, got sent

out last week and how many foreclosures you will conduct where the notice was defective."

Lewis replied "That being said, it seems to me that the real issue here is that Nationstar's records show a substantial deficiency and you contend that the account is current. I know that you are busy studying for the bar exam, so we understand that you may not have time to provide a comprehensive audit trail until after the exam. Unfortunately, we cannot pull the sale just based on your statement that the loan is current." In response to Lewis' request for documentation, Debtor stated "Thank you for your reply. As I stated, I am preparing to take the bar next Thursday. If I had a couple of extra hours to assemble the documentation you requested, I would use it to sleep or to study. At this point, I just want to make sure that you and Nationstar are on notice that you are about to have a foreclosure sale on a deed of trust whose underlying obligation is current. I don't have time to provide the documentation you request at this time.

106.   Debtor was taking summer law courses while studying for the bar exam in the summer of 2017.

107.   Debtor was not well in July 2017. He was 300 pounds and his Type 2 diabetes was uncontrolled. At times, while driving home from law school at night, he would put on a hoodie with the hood up and turn the heater on high just to try to keep from freezing. Studying was difficult as Debtor could only stay awake for a couple of hours at a time before having to sleep for several hours. Debtor was sleeping 14-18 hours per day.

108.   On July 25, 2017, Debtor filed a complaint with a reference number B-07-17-03403 using Nationstar's online account. Nationstar responded on July 25, 2017.

109.   On July 25, 2017, Debtor obtained an injunction against the foreclosure sale scheduled for August 1, 2017.

110.    Debtor mailed a series of payments by check between August 2, 2017 and October

20, 2017 to CitiMortgage on the mortgage debt. These check payments were refused and

returned to Debtor by mail.

| NUMBER | DATE | AMOUNT |
|--------|------|--------|
| Payment 80 | 8/2/2017 | $ 6,694.32 |
| Payment 81 | 8/2/2017 | $ 2,231.44 |
| Payment 82 | 8/31/2017 | $ 10,000.00 |
| Payment 83 | 8/31/2017 | $ 2,231.44 |
| Payment 84 | 9/2/2017 | $ 6,694.32 |
| Payment 85 | 9/16/2017 | $ 15,000.00 |
| Payment 86 | 9/17/2017 | $ 3,661.76 |
| Payment 87 | 9/19/2017 | $ 2,231.44 |
| Payment 88 | 9/22/2017 | $ 2,231.44 |
| Payment 89 | 9/28/2017 | $ 4,462.88 |
| Payment 90 | 10/6/2017 | $ 2,231.44 |
| Payment 91 | 10/20/2017 | $ 6,237.18 |

111.    Debtor had funds in the bank on which these checks for mortgage payments were

drawn sufficient to cover all outstanding checks at the time each check was signed. Debtor

had funds in the bank, Navy Federal Credit Union, and an investment account sufficient to

cover both the outstanding checks and the checks that had been returned to him (but were

not yet void) at all times.

112.    Plan Section 10.07 states, in part: Checks issued by Debtor in respect of Allowed

Claims shall be null and void if not cashed within ninety (90) days of the date of delivery

thereof. Requests for reissuance of any check shall be made directly to Debtor by the holder

of the Allowed Claim to whom such check originally was issued. Any claim in respect of

such a

voided check must be made within ninety (90) days after the date of delivery of such check.

After such date, all Claims in respect of void checks shall be discharged and forever barred,

and the amount of such checks shall become Unclaimed Property and returned to Debtor.

113.　　　On September 29, 2019, Debtor filed a complaint using his online Nationstar account complaining about a payoff request Debtor found listed on his account miscellaneous documents. The payoff request was faxed to a fax number that Nationstar listed in a fraud case in California relating to real estate fraud. Nationstar sent a reply on October 2, 2017.

114.　　　Debtor's access to his Nationstar online account continued until at least mid-October 2017. Debtor recalls access the website a week or two before he filed the Notice of Plan Completion, but cannot specify a date. The last documentation Debtor has is a screenshot dated September 29, 2019.

115.　　　Debtor's Motion to Reopen filed on November 1, 2017 states, in part "5. Part of the Provisional Closing Order required that, in order to receive their discharge, Debtors had to file a Motion to Reopen and Notice of Plan completion once all payments required under the plan had been tendered by Debtors.  6. Since the Court entered the Provisional Closing Order, Debtors have tendered all payments required under the confirmed plan."

116.　　　Debtor likely received the court's Notice of Intent to Issue Discharge, mailed on November 3, 2017, on Saturday November 4, 2017 or Monday November 6, 2017.

117.　　　Debtor realized at the time that the clerk's notice was being sent to CitiMortgage and not to Nationstar. Debtor did and does believe that service on CitiMortgage as the claimholder at that time was legally sufficient. But Debtor's primary concern was not estoppel. Debtor wanted both Nationstar and CitiMortgage were given notice so at least one of them would show up at the discharge hearing so that the issue of proper payee could finally be settled by the court.

118.     Debtor did not add Nationstar to the creditor list for several reasons. First, Nationstar was not a prepetition creditor, so amending the schedules was not appropriate. Second, a Debtor cannot modify the payment and notice addresses for creditors with proofs of claims filed. Third, it seemed absurd to simultaneously deny that Nationstar was entitled to payments yet still add Nationstar as a creditor.

119.     However, the biggest reason Debtor did not add Nationstar to the court's creditor list was that Debtor intended to send the notice to Nationstar via the online portal, just as he had done with several complaints and the notice of the state suit.

120.     Within a few days (at the most) after receiving the Notice of Intent to Issue Discharge, Debtor attempted to log on to his online account but found his access denied. The website stated "ONLINE ACCOUNT UNAVAILABLE . . . Because you are involved in an active bankruptcy, we are unable to display your account online. Please call us or have your attorney call us at 888-480-2432 as soon as possible. Our bankruptcy specialists will help you access your account information." Debtor considered this absolute proof that Nationstar had already received the Notice of Intent to Issue Discharge.

121.   Debtor made final payments on about a half dozen unsecured claims on November 1, 2017 and placed the final plan payments in the U.S. Mail prior to executing and filing the Notice of Plan Completion.

122.   Debtor's discharge in Case 11-41092 discharged over $150,000 in unsecured debt.

123.   A Final Decree was entered in Case 11-41092 on February 1, 2018 which stated:

> ON THIS DATE the Court reviewed the file in the above-referenced Chapter 11 case. On December 17, 2017, this Court entered a "Discharge of Individual Debtor in a Chapter 11 Case" for the benefit of each of the above-referenced individual debtor(s), after no timely objection to the entry of such discharge order was filed by any party within the 30-day objection

period established by an order entered by the Court on November 3, 2017 and noticed to all parties listed on the mailing matrix as constituted by the Court on that date. With the discharge order having been properly entered without objection, and in the absence of any unresolved administrative issue or other circumstance known to the Court which would preclude the closing of this case, the Court finds that just cause exists for the entry of the following order.

124.   The court clerk closed Case 11-41092 on February 16, 2018.

125.   In the state court litigation, Nationstar's Interrogatory No. 15 (propounded on December 15, 2016) asked "Do you contend that Defendant is not legally entitled to collect any debt owed under the Loan? If so, describe all facts supporting your contention. In his response dated January 24, 2017, Debtor replied "I have never seen an assignment of the note to the Defendant, so I cannot say whether Defendant was ever entitled to collect on the note. However, collection of the note was stayed upon the confirmation of Plaintiff's Chapter 11 plan which included treatment of the debt under the Note in Class 2 of the plan. After completion of all payments under the plan, which provided treatment for the debt, the note was discharged."

126.   Interrogatory No. 8 asked "Identify each and all statements made by Defendant to you that you contend were false or threatening (See *Amended Petition* at p. 4, ¶¶ 26-33) when Defendant made the statement(s). Debtor's response on January 24, 2017 stated "There is no allegation of "threatening" behavior, the allegation is that Defendant threatened to take an action that they were not legally entitled to do. Specifically, the Defendant threatened to foreclose on Plaintiff's property:

1) in Collin County
2) When Plaintiff was not in default of the debt securing the note
3) Without providing Plaintiff 30 day opportunity to cure under Mortgage
4) Prior to the end of a 30 day period provided in Notice of Default
5) Without complying with conditions in Plaintiff's bankruptcy plan which requires

30 calendar day notice to both Plaintiff and Plaintiff's Bankruptcy attorney prior to resorting to relief outside of bankruptcy.

127.   On March 12, 2018, David Garvin filed a notice of sale in Dallas County Property Records as substitute trustee for Nationstar. This filing including the same appointment clause in which Garvin purports to appoint himself substitute trustee.

128.   In the state court litigation, Nationstar sent Debtor its Second Amended Response to Plaintiff's Request for Admissions dated June 25, 2018. Request for Admission No. 40 stated, "Admit that the Plaintiff's and his Plaintiff's wife's, Teresa Lynn Wigington, personal liability for the debt evidenced by the Note was discharged by the Order of Discharge by the Eastern District of Texas Bankruptcy court entered on December 17, 2017 in Cause No. 11-41092 as Document 440. Nationstar's response was "Admit."

129.   Nationstar reported a delinquency related to the mortgage debt to credit reporting agencies which appeared on Debtor's personal credit report. Nationstar reported a delinquency, post discharge, for each month between January 2018 and July 2018.

130.   On May 5, 2018, Debtor and Nationstar attorney Durham conducted a phone conference. The discussion went as follows:

| | |
|---|---|
| Durham: | If you want to settle you have to make a demand. What do you want? Do you want a repayment plan. |
| Debtor: | The loan is paid off. It's been discharged. There's a court order . . . finding that all payments have been made. |
| Durham: | In . . In Bankruptcy Court? |
| Debtor: | Uh huh. |
| Durham: | Well, why didn't you allege that? |
| Debtor: | Well, . . . in my . . . initial petition, that wasn't the case yet. And . . . uhh, this whole, Nationbank . . Nationstar never filed a change of creditor claim in the bankruptcy. So that's why they stopped getting payments when Citimortgage stopped sending them to them. But under the bankruptcy plan, I had to send them to the address shown on the proof of claim. |
| Durham: | When . . . When was your discharge date? I mean that's the kind of stuff that is more important to share with me than some . . . case |

|  |  |
|---|---|
|  | you think applies. Because we are not a law firm that handles the bankruptcy. |
| Debtor: | The discharge was on December 17. And Nationstar filed a request for notices on . . . 10 days later. |
| Durham: | December 17, 2017? |
| Debtor: | Uh huh. |
|  |  |
| Durham: | I'll double check with them to make sure that the, like you said, this loan is paid off. Uhmm. Now, do you mean paid … You said paid off? Do you mean paid off or . . . discharged? |
| Debtor: | Uhmm. Discharge is just liability on the debt. Uhmm . . . |
| Durham: | I'm trying to figure . . . |
| Debtor: | The debt was paid down to zero. |
| . . . |  |
| Durham: | So were these checks . . were these checks cashed that you wrote? |
| Debtor: | No. They were returned. |
| Durham: | So, . . . you haven't paid off the loan. |
| Debtor: | No. Uhmm. . . The payments were deemed made, not tendered, when I put them in the mail. |
| Durham: | Deemed? By whom? |
| Debtor: | By the bankruptcy plan |
| Durham: | OK. Are you ready . . . Are you ready to make that claim to the bankruptcy court? |
| Debtor: | I already did. I mean I signed under oath saying that I paid . . . made all the payments required under the plan. |
| Durham: | OK. And you made them to a party that you knew wasn't going to cash them. That you knew was not your mortgage servicer. |
| Debtor: | As required by the plan. |

131.    On September 5, 2018, Nationstar's attorney sent Debtor a notice of sale stating

that Debtor's residence would be sold at auction on October 2, 2018.

132.    Nationstar's designated single point of contact for Debtor changed numerous times

while Nationstar was involved with Debtor's mortgage.

133.    Select Portfolio filed a Notice of Transfer of Claim in Case 18-42230 related to the

mortgage debt on October 23, 2019.

134.    On November 5, 2019, Debtor conferenced with Nationstar attorney Grey Burks.

A discussion ensued which covered largely the same topics as Debtor's discussion with

Durham, including that not only had the mortgage debt been discharged in bankruptcy, it

had been paid in full under the Plan thus extinguishing the lien. Plaintiff told Burks that he

had told the Nationstar phone representative that he would continue to send payments to

Citimortgage at the address on the proof of claim until and unless Nationstar filed a notice

of transfer of claim. Burks responded, "You didn't say that, you didn't say the address."

and "That statement wasn't in writing."

135.     In that meeting, Debtor asked Burks why no assignment of the deed of trust had

been filed in the property records for the purported assignment of the deed of trust to Select

Portfolio.

136.     On November 6, 2019, an assignment of the deed of trust executed on November

5, 2019 assigning the deed of trust to Select Portfolio was filed in the Dallas County

Property Records.

137.     On February 5, 2020, in Debtor's adversary proceeding Nationstar stated in its

Answer (DOC 27) that "the mortgage account which is the basis for the proof of claim at

issue was service transferred to Select Portfolio Servicing, Inc. effective October 1, 2019.

138.     As of January 26, 2025, Debtor has never been contacted by the U.S. Attorney's

office in relation to any alleged fraud and has not been indicted or convicted of any alleged

fraud.

139.     Prior to the 12(b)(6) hearing in 19-04074, Nationstar never stated to Debtor that the

Bankruptcy Case was closed prior to February 1, 2018 and Nationstar never stated that it

did not have notice of the discharge proceedings.

140.     In discovery, US Bank and/or Shellpoint have stated multiple times that they do not

have the business records of any prior mortgage servicer of Debtor's mortgage.

141.    As of January 26, 2025, US Bank has not reviewed the fees and costs and invoices contained in the proof of claim with Debtor and has not removed any fees and costs that were improperly posted.

142.    As of January 26, 2025, US Bank has not retracted its verification of the proof of claim and has not amended its proof of claim.

143.    A transfer of claim has been filed in approximately half of the provisionally closed individual Chapter 11 cases in the Eastern District of Texas.

## 3.  PROPOSED CONCLUSIONS OF LAW

Contract Construction

144.    "Herein" means "in this plan".

145.    The entire allowed claim required to be paid under the plan.

146.    The obligation that existed post-confirmation is a contract that incorporated terms of the note by reference with the Plan provisions overriding contradictory note terms.

Fraud on the Court

147.    The alleged fraudulent conduct of Debtor is not the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication,

148.    The alleged conduct does not rise to the level of the most serious misconduct, such as bribery of a judge or members of a jury, or fabrication of evidence by a party in which an attorney is implicated.

    a.   An attorney is not implicated here.

    b.   No evidence was fabricated.

149.    At worst, the alleged conduct was a failure to disclose as described by the prior court.

150.    The was no unconscionable plan or scheme.

151.    There was no fraud.

    a.   There was a material statement.

    b.   There was no false statement.

    c.   If any statement was false, Debtor did not know the statement was false when he made it.

    d.   There was no intent to deceive.

    e.   The court did not justifiably rely on any false statement.

152.    The alleged fraud is not supported by clear and convincing evidence.

153.    The fraud on the court claim is barred because it was raised to late in the proceeding.

## Res Judicata

154.    The discharge order is a final judgment on the merits.

## Collateral Estoppel

155.    US Bank is precluded from relitigating whether "debtor has actually completed all payments for which such debtor was designated to act as the disbursing agent under the confirmed Chapter 11 plan."

156.    The issue here is identical to the one in Case 11-41092.

157.    This issue was actually litigated in Case 11-41092.

158.     This determination of the issue in Case 11-41092 was a necessary part of the order

of discharge.

Quasi Estoppel

159.     Nationstar adopted the position that Debtor's bankruptcy case was active.

160.     It would now be detrimental to Debtor to allow US Bank or Nationstar to adopt the

opposite position all these years later.

161.     It would be unconscionable to allow US Bank to contend the case was not active.

Constitutional Notice

162.     US Bank has the burden of proof on a Rule 60(b)(4) motion based on constitutional

notice.

163.     US Bank is required to plead both lack of actual notice and lack of notice that was

reasonably calculated, under all the circumstances, to apprise Nationstar of the pendency

of the discharge proceedings and afford them an opportunity to present their objections to

even raise a Rule 60(b)(4) claim

164.     The fact that US Bank has no evidence that Nationstar did not have actual notice is

fatal to its Rule 60(b)(4) claim.

165.     Nationstar had actual knowledge of the discharge proceeding.

166.     Nationstar had actual knowledge in time to afford them an opportunity to present

their objections.

167.     This opportunity to present an objection may come after the judgment was entered.

168.     US Bank is barred from raising a Rule 60(b)(4) motion because Nationstar learned

of the violation of its rights in time to present it to the prior court prior to the bankruptcy

case being closed.

169.      US Bank is barred from raising a Rule 60(b)(4) motion because Nationstar was at
fault due its failure to file a transfer of claim despite believing and professing to Debtor
that the case was active when then was not actual bar to filing a transfer of claim in the
provisionally closed case and had done so in the past in similar situations.

170.      Just terms must be applied in the event the Rule 60(b)(4) motion is granted
considering that at least part of the reason that Nationstar did not receive notice is it failed
to file a transfer a claim in a case that Nationstar believed and proclaimed to be active.

Binding Via Against CitiMortgage

171.      CitiMortgage and its attorneys were served with the Notice of Intent to Issue
Discharge.

172.      CitiMortgage still had an interest in the mortgage at the time of the discharge
proceeding.

173.      Freddie Mac still had an interest in the mortgage at the time of the discharge
proceeding.

174.      Nationstar alleges that it had an interest in the mortgage at the time of the discharge
proceeding.

175.      Freddie Mac authorized CitiMortgage to represent Freddie Mac in the bankruptcy
proceeding.

176.      Freddie Mac never withdrew that authorization.

177.      The Discharge Order binds CitiMortgage as a named party.

178.      Nationstar is bound by the ruling against CitiMortgage because the interest was
transferred during a proceeding.

179.    Nationstar is bound by the ruling against CitiMortgage and Freddie Mac because all three were in privity at the time of the discharge proceeding.

180.    CitiMortgage represented in its proof of claim that it filed the claim on behalf of itself and its assignees.

181.    CitiMortgage's attorneys represented in the notice of appearance that they represented CitiMortgage and their assignees.

182.    Nationstar is an assignee of CitiMortgage.

183.    Nationstar is bound by apparent authority of CitiMortgage.

184.    Debtor reasonably understood that CitiMortgage and their attorney had authority to act for Nationstar.

Proof of Claim

185.    US Bank did not execute and file its proof of claim in compliance with the bankruptcy rules.

186.    The Form 410a attached to US Bank's proof of claim did not substantially conform to the official form.

187.    US Bank deleted Section 5 from the Form 410a attached to its proof of claim.

188.    US Bank indicated that there was a material default as of the petition date but failed to provide any transaction history at all.

189.    US Bank did not provide a transaction history that went back to the first uncured default.

190.    The numbers in Section 2 and Section 3 are undeniably conflicting.

191.    US Bank did not include information in the proof of claim that would permit Debtor to determine the amount needed to cure the default.

192.      The proof of claim declarant did not have a reasonable belief that the information

on the proof of claim was true and correct.

193.      US Bank's failure to provide information required by the rules is not substantially

justified.

194.      US Bank's failure to provide information required by the rules is not harmless.

195.      US Bank is precluded from presenting the information omitted from its proof of

claim at trial.

196.      US Bank's proof of claim does not constitute prima facie evidence of the validity

and amount of the claim.

197.      US Bank has the burden to prove its claim in full.

Debt Claim

198.      The existing financial obligation is a contract.

199.      US Bank has not shown that it is entitled to enforce the financial obligation.

200.      US Bank has not proven a sum certain.

201.      US Bank has not properly applied all payments, offsets, and discharge by tenders

to the Debt.

202.      US Bank has not shown that it is entitled to collect or charge any fees or costs added

to the account by the terms of the deed of trust or financial obligation.

Proof of Payment

203.      Debtor has shown payments have been made to and accepted by a party entitled to

enforce the obligation.

204.      CitiMortgage did not comply with Section 4A.406 of the Texas Business and

Commerce Code in relation to the two payments accepted by CitiMortgage but not applied

to Debtor's account and those payments discharged the mortgage to the extent of each payment.

## Tender of Payment

205.    Debtor has shown that tenders have been made but not accepted by a party entitled to enforce the obligation.

206.    Texas state law provides that an unaccepted or refused tender discharges the in rem liability of the collateral to the extent of the tender.

## Notice of Assignment

207.    The common law applies to the extent it is not modified by contract or preempted by bankruptcy law.

208.    The notice of assignment did not reasonably identify the transferred obligation.

209.    The notice of assignment did not provide adequate notification that payment was to be made to the transferee.

## Waiver of Notice of Assignment

210.    Nationstar waived the Notice of Assignment by accepting, without complaint, four post-assignment payments that Debtor made to CitiMortgage.

## Modification by Contract

211.    Plan Section 10.07 modifies the applicable code section or common law and permitted payments to continue to the payee at the payee address listed in the claims register even after notice of assignment.

## Preemption by Code

212.    Bankruptcy Code preempts state law of assignments in provisionally closed bankruptcy cases such as here.

Request for Proof

213.    Debtor's statement that he would continue to pay the mortgage according to the payee and payment address given in the claims log and that Nationstar needed to file a transfer of claim if they wanted to be paid was a valid request for proof.

214.    Nationstar did not seasonably furnish reasonable proof that the obligation had been transferred.

Whether Bankruptcy Case was actually closed

215.    The provisional closure order did not close the case for the purposes of Rule 3001(e)(2) and Rule 362(a)(1).

216.    The conduct of the Debtor and Nationstar, and other parties to provisionally closed cases in the Eastern District of Texas constitute Course of Performance, Course of Dealing, and Usage of Trade and must be considered in construction of the Plan payment requirements.

Respectfully submitted,

Dated: January 26, 2025

/s/ George Dale Wigington_
George Dale Wigington
Pro Se
State Bar No.: 24091665
Dalewig10@verizon.net
2451 Elm Grove Road
Wylie, TX 75098
469-235-1482

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the parties in interest on the attached mailing list on January 26, 2025 by mailing a copy of same to them via first class mail or through the court's CM/ECF electronic mail (Email) system.

/s/ George Dale Wigington
George Dale Wigington

Tricia Ann Morra
Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing
as servicer for US Bank Trust National Association, Not In Its
Individual Capacity But Solely As Owner Trustee for VRMTG
Asset Trust
*tmorra@raslg.com*